628 F.2d 1214
 Fed. Sec. L. Rep. P 97,637
R. Eugene VAUGHN, G. Kenneth Vaughn, Eugene W. Vaughn, Glenn
A. Vaughn and Marilyn Anne Swindall, Plaintiffs-Appellants,
v.
TELEDYNE, INC., a Delaware corporation, Henry E. Singleton,
George A. Roberts, George Kozmetsky, Robert C.
Jackson, Arthur Rock and Claude E.
Shannon, Defendants-Appellees.
 No. 78-2309.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Jan. 9, 1980.
Decided Sept. 17, 1980.
 
 Walter H. Drane, Schurmer, Drane, Bullis & McCarthy, Los Angeles, Cal., for plaintiffs-appellants.
 Kenneth R. Heitz, William A. Masterson, Los Angeles, Cal., for defendants-appellees.
 Appeal from the United States District Court for the Central District of California.
 Before CHOY and ANDERSON, Circuit Judges, and SMITH,* District Judge.
 CHOY, Circuit Judge:
 
 
 1
 Appellants filed a complaint alleging violations of sections 10(b) and 14(e) of the Securities Exchange Act of 1934 (the Act), 15 U.S.C. §§ 78j(b), 78n(e), and Rule 10b-5 of the Securities and Exchange Commission (SEC) regulations, 17 C.F.R. § 240.10b-5; fraud; and breach of a fiduciary duty by Teledyne and several of its directors. The district court granted summary judgment in favor of appellees. We affirm.
 
 I. Facts
 
 2
 In connection with Teledyne's 1969 acquisition of Financial Indemnity Corporation and Foremost Insurance Service, appellant G. Kenneth Vaughn (Kenneth) received 39,200 shares of $3.50 convertible stock of Teledyne. These shares were subject to redemption by Teledyne on or after June 30, 1971 for $100 a share or, at Kenneth's option, the shares could be converted into Teledyne common stock at a ratio of four shares of Teledyne to one share of the convertible. Appellants allege that Kenneth was advised by appellee Henry E. Singleton, Chairman of the Board of Directors and Chief Executive Officer of Teledyne, that Teledyne would not call the stock in June 1971, when first possible under the contract.
 
 
 3
 On June 28, 1971 Teledyne called the $3.50 convertible stock, giving holders of the stock until July 28, 1971 to have the stock redeemed or to convert the stock. Kenneth allegedly attempted to contact Singleton, seeking advice as to which of the two options was better.[1] Unable to reach Singleton, he spoke with a Themistocles Michos, then Secretary of Teledyne, who is not a party to this action. Michos allegedly told Kenneth that most of the holders of the convertible stock were "redeeming" it. He also allegedly told Kenneth that, if Kenneth "redeemed" the stock and later (after talking with Singleton) decided that he wanted to convert to Teledyne common stock, the redemption could be unwound.
 
 
 4
 Kenneth sold 18,100 shares of the convertible stock to Teledyne. He had transferred 18,900 other shares to his brother, appellant R. Eugene Vaughn (Richard). Richard sold 14,000 shares to Teledyne and converted the remaining 4,900 shares into common stock. Singleton allegedly later refused to unwind the redemptions though Kenneth repeatedly asked him to do so within the next two months.
 
 
 5
 In September 1972 Teledyne made a tender offer to purchase at least one million shares of its common stock at $20 per share; 8.9 million shares were tendered and accepted.
 
 
 6
 In December 1973 Teledyne made another tender offer for a minimum of four million shares at $14 per share; 1.6 million shares were accepted. On May 31, 1974 Teledyne offered to exchange 10% subordinated debentures in the face amount of $20 for at least one million of its shares; 3.8 million shares were offered and exchanged. A similar offer was made in December 1974; 1.9 million shares were offered and exchanged for 10% subordinated debentures in the face amount of $16.
 
 
 7
 In April 1975 Teledyne made a third tender offer for a minimum of one million shares; 3.6 million shares were offered and accepted at a price of $18 per share.
 
 
 8
 In February 1976 Teledyne made a fourth tender offer. 2.5 million shares of stock were offered and accepted at a price of $40 per share.
 
 
 9
 During the period from June 1971 to November 1976, the number of outstanding shares of Teledyne common stock decreased from 38 million to 11 million. Teledyne's earnings, on the other hand, increased dramatically in 1975 and 1976. Other than appellee George A. Roberts who exercised an option to purchase 34,778 shares of Teledyne in 1975, none of the individual appellees purchased any Teledyne stock between 1971 and 1976. Nonetheless, the aggregate percentage of stock owned by these individuals increased from 3.94% in 1971 to 10.49% in 1975.
 
 
 10
 At various times between October 1971 and December 1973, Richard and appellant Marilyn Anne Swindall (Marilyn), Kenneth's daughter,[2] sold Teledyne common stock in the market. Marilyn sold 608 shares at prices not exceeding $26 per share. Richard sold 20,794 shares at an average price of $11 per share.
 
 
 11
 Kenneth tendered 352 shares, and his son, appellant Eugene W. Vaughn, tendered 1,134 shares in response to the April 1975 tender offer. In November 1975 appellant Glenn A. Vaughn (also Kenneth's son) sold in the market 200 shares of Teledyne common stock at a price of approximately $21.75 per share.
 
 
 12
 In November 1976 appellants filed a complaint against appellees Teledyne, Singleton, Roberts, George Kozmetsky, Robert C. Jackson, Arthur Rock, and Claude E. Shannon. All of the individual appellees were members of the Board of Directors at Teledyne. The complaint was amended in February 1977. The complaint alleged violations of §§ 10(b) and 14(e) of the Act and Rule 10b-5; fraud; and breach of a fiduciary duty in furtherance of "a plan and conspiracy to obtain for (appellees) increased control of TELEDYNE, to exclude numerous of its public shareholders from participation in TELEDYNE's future equity growth and profitability and to utilize the assets of TELEDYNE to accomplish their illegal goals."
 
 
 13
 After substantial discovery,[3] the district court granted summary judgment in favor of Teledyne and the directors, concluding that there had been no violation of the securities laws, that there was no breach of fiduciary duty, and that the statute of limitations barred recovery either from the alleged misrepresentations or from the failure to disclose the alleged plan or financial projections.
 
 II. Summary Judgment
 
 14
 Summary judgment is properly awarded where there is no genuine issue of material fact or where, viewing the evidence and the inferences drawn therefrom in the light most favorable to the party opposing the motion, the moving party clearly is entitled to prevail as a matter of law. Smith v. Gross, 604 F.2d 639, 641 (9th Cir. 1979).
 
 A. Statute of Limitations
 
 15
 As the parties state, the three-year statute of limitations of Cal.Code Civ.Proc. § 338(4) is applicable to this action. See Rochelle v. Marine Midland Grace Trust Co., 535 F.2d 523 (9th Cir. 1976); United California Bank v. Salik, 481 F.2d 1012 (9th Cir.), cert. denied, 414 U.S. 1004, 94 S.Ct. 361, 38 L.Ed.2d 240 (1973). Where more than three years have elapsed between the time that the wrong allegedly was perpetrated and the filing of the action, the plaintiff has the burden of proving facts that would toll the statute. Rochelle v. Marine Midland Grace Trust Co., 535 F.2d at 531-32.
 
 1. Misrepresentations
 
 16
 Appellants allege that sometime in July 1971, Michos, then Secretary of Teledyne, misrepresented to Kenneth and Richard that most of the holders of the convertible stock were "redeeming" it and that such a redemption later could be unwound and changed into a conversion to Teledyne common stock. Appellants did not file suit until November 1976, more than five years after the misrepresentations allegedly were made.[4]
 
 
 17
 The district court concluded that Kenneth and Richard[5] were barred from recovery for the alleged misrepresentations because, by July 30, 1971, they "had sufficient facts to know that Teledyne had breached representations allegedly made to them with respect to the redemption of the $3.50 Preferred Stock." We agree that recovery is barred. Appellants admit that by September 1971 Singleton had refused to unwind the stock redemption at least twice, and they allege no facts that toll the statute of limitations. The latest possible date that the "misrepresentation" claim for relief could have accrued was in September 1971, more than three years before this action was filed. Thus, appellants cannot recover for any damages caused by the alleged misrepresentations regarding the redemption of the preferred stock.
 
 2. Conspiracy
 
 18
 Appellants' main contention is that appellees had a plan to reduce the number of outstanding shares of Teledyne common stock, thereby increasing their proportionate control of Teledyne and their earnings. As evidence of this scheme appellants point to the frequency of Teledyne's tender offers and other acquisitions of its own stock, at a substantial cost; the reduction of outstanding shares from approximately 38 million shares in 1971 to less than 11 million shares in 1976; the increase in the net income per share from $1.48 in 1971 to $10.48 in 1976; and the increase in the percentage of stock owned by appellees from 3.94% in 1971 to 10.49% in 1975.
 
 
 19
 The district court found that by October 18, 1972 (after 8.9 million shares were accepted in the first tender offer) "plaintiffs had sufficient facts to determine that the defendants had purportedly failed to disclose certain facts to them with respect to (the) alleged scheme and conspiracy," and concluded that recovery was barred by the statute of limitations. It is true that if the appellants knew sufficient facts to put them on inquiry notice before November 19, 1973, any claim for relief from stock transactions before that date would be barred by the statute of limitations. See Robuck v. Dean, Witter & Co., No. 77-1841, --- F.2d ----, ---- (9th Cir. March 7, 1980); Rochelle v. Marine Midland Grace Trust Co., 535 F.2d at 531. However, we cannot say as a matter of law that they had such facts. One tender offer in 1972, even though 8.9 million shares were offered and accepted, is insufficient to suggest that appellees had a plan to acquire control of Teledyne by a series of tender offers. Adding knowledge of the call of the convertible stock does not alter our conclusion.[6] Appellants at least raised an issue of material fact as to when they were put on inquiry notice.
 
 
 20
 Thus, the district court should not have ruled, on summary judgment, that these claims were time barred. This error was harmless, however, because we agree that as a matter of law appellants had no valid claim. See Section B infra.
 
 B. Issues of Material Fact
 
 21
 Appellants claim that appellees conspired to manipulate Teledyne stock through a series of tender offers and stock acquisitions. They contend that there are issues of material fact as to whether appellees had such a plan and whether appellees had any business or financial projections that they were under a duty to disclose.
 
 
 22
 The district court found that "(t)here was no plan or conspiracy between June 1971 and February 1976 to effect a decrease in the outstanding shares of Teledyne," that "Teledyne did not prepare or possess any projections or forecasts of its consolidated earnings for the years 1971 through 1976," and that none of the appellees had made any untrue statements, failed to disclose any material facts, engaged in any manipulative acts, or employed any scheme to defraud. Thus, the lower court concluded that appellees did not violate any securities law or breach any fiduciary duty. We agree that appellants have failed to raise any genuine issues of material fact on these questions and that appellees are entitled to prevail as a matter of law. Therefore, summary judgment was appropriate.
 
 1. Securities Violations
 
 23
 Section 10(b) of the Act makes it unlawful "(t)o use or employ, in connection with the purchase or sale of any security . . ., any manipulative or deceptive device or contrivance" in contravention of SEC rules and regulations. 15 U.S.C. § 78j(b). Rule 10b-5 states:
 
 
 24
 It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
 
 
 25
 (a) To employ any device, scheme, or artifice to defraud,
 
 
 26
 (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
 
 
 27
 (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.
 
 
 28
 17 C.F.R. § 240.10b-5 (1979). Section 14(e) is generally the same as § 10(b) and Rule 10b-5, but is applicable specifically to tender offers rather than other purchases or sales of securities. Compare 15 U.S.C. § 78j(b) and 17 C.F.R., § 240.10b-5, with 15 U.S.C. § 78n(e); see Gulf & Western Industries, Inc. v. Great Atlantic & Pacific Tea Co., Inc., 476 F.2d 687, 696 (2nd Cir. 1973).
 
 
 29
 A 10b-5 action can be maintained only if the alleged conduct is "manipulative or deceptive" within the meaning of the statute. Santa Fe Industries, Inc. v. Green, 430 U.S. 462, 474, 97 S.Ct. 1292, 1301, 51 L.Ed.2d 480 (1977). "Manipulative" has become almost a term of art when used in connection with securities markets and "refers generally to practices, such as wash sales, matched orders, or rigged prices, that are intended to mislead investors by artificially affecting market activity." Id. at 476, 97 S.Ct. at 1302 (emphasis added).
 
 
 30
 Appellants argue that the frequency, number, and size of tender offers and stock acquisitions by Teledyne of its own stock and the resultant change in earnings and proportions of control evidenced a conspiracy, a plan to obtain for appellees increased control of Teledyne, in violation of the Act. Appellants further argue that such a plan is a material fact and that the mere failure to disclose the plan and any financial or other projections made as part of the plan violates the Act.
 
 
 31
 a. Scheme to Defraud
 
 
 32
 Cases where intent is a primary issue generally are inappropriate for summary judgment unless all reasonable inferences that could be drawn from the evidence defeat the plaintiff's claims. Calnetics Corp. v. Volkswagen of America, Inc., 532 F.2d 674, 683-84 (9th Cir.), cert. denied, 429 U.S. 940, 97 S.Ct. 355, 50 L.Ed.2d 309 (1976). However, in opposing a motion for summary judgment the plaintiff must present significant probative evidence relevant to the issue of intent, e. g., the time, place, or nature of the alleged fraudulent activities; mere conclusory allegations are insufficient to require that the motion for summary judgment be denied. Bosse v. Crowell Collier and Macmillan, 565 F.2d 602, 611 (9th Cir. 1977); see Fed.R.Civ.P. 56(e).
 
 
 33
 Any tender offer or acquisition by a company of its own stock obviously would reduce the number of outstanding shares and increase the proportionate control and earnings of all shareholders who retained their stock (not just the control and earnings of the directors). It is not a violation of any securities law to fail to disclose a result that is obvious even to a person with only an elementary understanding of the stock market. Alabama Farm Bureau Mutual Casualty Co., Inc. v. American Fidelity Life Ins. Co., 606 F.2d 602, 611 (5th Cir. 1979). Nor is it necessarily a violation of the securities law to have a plan to make a stock acquisition with such a result, unless the plan includes practices that are intended to mislead or to defraud investors. Id. at 612-14; Nelson v. Serwold, 576 F.2d 1332 (9th Cir.), cert. denied, 439 U.S. 970, 99 S.Ct. 464, 58 L.Ed.2d 431 (1978).
 
 
 34
 The undisputed facts in this case establish that there was a series of six major stock acquisitions in less than four years, that more than 22 million shares of Teledyne common stock were purchased by the corporation, and that those shareholders retaining their stock have acquired a greater proportion of control of the corporation as well as higher per share earnings (a result that is obvious given the first two facts). Even if these facts alone were sufficient to raise an inference that appellants had a long-range plan, they do not raise the slightest inference that the plan was unlawful or in any way intended to defraud investors.
 
 
 35
 In fact, each of the individual appellees has denied the very existence of a plan, thus adequately rebutting the allegations of conspiracy. Appellants, on the other hand, have failed "to come forward with specific, factual support of (their) allegations of conspiracy," ALW, Inc. v. United Air Lines, Inc., 510 F.2d 52, 55 (9th Cir. 1975). The mere fact that the stock transactions occurred cannot defeat a motion for summary judgment in the absence of "any significant probative evidence tending to support the complaint." First National Bank v. Cities Service Co., 391 U.S. 253, 290, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968); Mutual Fund Investors v. Putnam Management Co., 553 F.2d 620, 624 (9th Cir. 1977).
 
 
 36
 We agree with the district court that from the undisputed facts presented it would not be reasonable to find a scheme to defraud that violates § 10(b) or Rule 10b-5(a). Thus, summary judgment was appropriate on this claim for relief.
 
 
 37
 b. Nondisclosure
 
 
 38
 Material facts must be disclosed unless some doctrine limits the duty to disclose. Zweig v. Hearst Corp., 594 F.2d 1261, 1266 (9th Cir. 1979). The test for materiality is whether there is a substantial likelihood that a reasonable investor would consider the fact important in making an investment decision. Id. It is a violation of the securities law to omit to state a material fact if it is "necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." 17 C.F.R. § 240.10b-5(b) (1979); 15 U.S.C. § 78n(e).
 
 
 39
 (1) Purpose of Stock Acquisitions
 
 
 40
 Corporate officials are under no duty to disclose their precise motive or purpose for engaging in a particular course of corporate action, so long as the motive is not manipulative or deceptive and the nature and scope of any stock transactions are adequately disclosed to those involved. See Alabama Farm Bureau Mutual Casualty Co. v. American Fidelity Life Ins. Co., 606 F.2d at 608-14; Golub v. PPD Corp., 576 F.2d 759, 765 (8th Cir. 1978); Joyce v. Joyce Beverages, Inc., 571 F.2d 703, 706 (2nd Cir.), cert. denied, 437 U.S. 905, 98 S.Ct. 3092, 57 L.Ed.2d 1135 (1978).
 
 
 41
 As discussed above, it is not reasonable to infer that appellees had any plan. They cannot be required to disclose a plan that does not exist.
 
 
 42
 Moreover, other information relevant to the nature and scope of the stock acquisitions in this case was adequately disclosed, e. g., the offers for stock were at a specified price close to market price and the quantity of stock desired was stated. The result that those who retained their stock would have a higher percentage of control and a greater earnings per share was obvious even to the uninitiated. And, appellants have not shown that anything about the transactions was in any way misleading. We hold that appellees fulfilled their duty to disclose here.
 
 
 43
 (2) Financial Projections
 
 
 44
 The SEC does not require a company to disclose financial projections. Securities and Exchange Commission, "Disclosure of Projections of Future Economic Performance," 38 Fed.Reg. 7220 (1973); accord Freeman v. Decio, 584 F.2d 186, 199-200 (7th Cir. 1978) (financial projections not material information in insider trading action); Marsh v. Armada Corp., 533 F.2d 978, 987 (6th Cir. 1976) (disclosure of projections not required under 10b-5 in merger proxy statement), cert. denied, 430 U.S. 954, 97 S.Ct. 1598, 51 L.Ed.2d 803 (1977).
 
 
 45
 Here, Singleton admitted that although projections were not made for Teledyne as a whole, "(d)uring the period 1971 through 1976 an increasing number of (Teledyne's) operating units have twice annually prepared business plans. These plans contain estimates of such operating companies' sales and earnings (as well as numerous other factors) for the upcoming fiscal year." It is just good general business practice to make such projections for internal corporate use. There is no evidence, however, that the estimates were made with such reasonable certainty even to allow them to be disclosed to the public.[7]
 
 
 46
 Appellants have pointed to no specific evidence suggesting that disclosure of these projections was "necessary in order to make the statements made . . . not misleading." Thus, no genuine issue of material fact existed as to any financial projections and summary judgment on appellants' disclosure claim was proper.[8]
 
 2. Fraud and Breach of Fiduciary Duty
 
 47
 As we have discussed above, appellants have not pointed to any evidence that even raises an issue of material fact as to whether appellees had a fraudulent intent. Indeed, the record suggests that there is no available evidence that would support appellants' claim.
 
 
 48
 A breach of fiduciary duty by corporate officers absent manipulation, deception, misrepresentation, or nondisclosure, violating securities law is actionable only under state law. Santa Fe Industries, Inc. v. Green, 430 U.S. at 473-74, 97 S.Ct. at 1300-1301; accord Alabama Farm Bureau Mutual Casualty Co. v. American Fidelity Life Ins. Co., 606 F.2d at 608. We have concluded that there was no violation of securities law here. Appellants have not offered any specific facts tending to establish a breach of fiduciary duty.
 
 III. Conclusion
 
 49
 In opposing the motion for summary judgment appellants failed to "set forth specific facts showing that there is a genuine issue for trial," Fed.R.Civ.P. 56(e). Appellees, on the other hand, have demonstrated that there is "no genuine issue as to any material fact," and that, based upon the undisputed facts, they are "entitled to a judgment as a matter of law," Fed.R.Civ.P. 56(c). Thus, the district court properly granted summary judgment to appellees. That judgment is AFFIRMED.
 
 
 
 *
 The Honorable Russell E. Smith, Senior District Judge for the District of Montana, sitting by designation
 
 
 [1]
 The closing price of the Teledyne common stock was $25.50 per share on June 28, 1971. Thus the preferred stock had a per share value of $2.00 more if it were converted than if it were redeemed
 
 
 [2]
 There is nothing in the record stating when or how Marilyn or appellants Eugene W. Vaughn and Glenn A. Vaughn, sons of Kenneth, acquired their Teledyne stock
 
 
 [3]
 Appellants claim on appeal that they need additional time for discovery. It is clear from the record, however, that appellants had ample opportunity to depose witnesses and to subpoena records and that in many instances they failed to do so or were unable to uncover any evidence supporting their allegations. Only after a significant period of time during which no discovery was performed by either side did appellees move for summary judgment
 
 
 [4]
 Teledyne common stock traded below $25 per share from 1972 to 1976. It was not until 1976 that four shares of common stock became worth more than $100, the redemption price of the convertible stock. Only then did appellants file this suit
 
 
 [5]
 Kenneth and Richard are the only appellants who knew and acted on the alleged representations. Thus, they are the only parties who could state a claim for relief if not for the limitation period
 
 
 [6]
 In fact, because most holders of the convertible stock elected to convert their stock, the 1971 call resulted in an increase in the number of the outstanding shares
 
 
 [7]
 We have previously held that partial disclosure of financial projections makes them material facts and that an individual may be liable under Rule 10b-5 if those projections thereafter are not disclosed completely and accurately. Marx v. Computer Sciences Corp., 507 F.2d 485, 489-92 (9th Cir. 1974); accord Sunstrand Corp. v. Sun Chemical Corp., 553 F.2d 1033, 1046 (7th Cir.), cert. denied, 434 U.S. 875, 98 S.Ct. 224, 225, 54 L.Ed.2d 155 (1977); cf. James v. Gerber Products Co., 587 F.2d 324 (6th Cir. 1978) (earnings figures only material when calculated with substantial certainty)
 
 
 [8]
 These projections of Teledyne subsidiaries do not support appellants' bald assertion that appellees had an overall financial projection of Teledyne's earnings that covered a five-year period and that appellees allegedly used in their purported scheme to defraud