**CARAVAN MOBILE HOME SALES, INC., Retirement Trust and Caravan Mobile Home Sales, Inc., Profit Sharing Trust, on Behalf of themselves and all other similarly situated, Plaintiffs/Appellants,**

**v.**

**LEHMAN BROTHERS KUHN LOEB, INC., a Maryland corporation; Philip Parham; Frederick Frank, Defendants/Appellees.**

**No. 84–2099.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 13, 1985.

Decided Aug. 20, 1985.

Perry A. Irvine, David L. Cooper, Irvine & Cooper, Palo Alto, Cal., for plaintiffs/appellants.

Patrick J. Mahoney, Kristen W. Maloney, Cooley, Godward, Castro, Huddleson & Tatum, Palo Alto, Cal., Cleary, Gottlieb, Steen & Hamilton, Edwin B. Mishkin, Judith A. Ripps, Mitchell A. Lowenthal, New York City, for defendants/appellees.

Before SNEED, TANG and CANBY, Circuit Judges.

CANBY, Circuit Judge:

Edwin Parish, the sole trustee of two employee trusts of Caravan Mobile Home Sales, Inc. (Caravan) brought this action for securities fraud on behalf of Caravan against Lehman Brothers Kuhn Loeb, Inc., Frederick Frank, and Phillip Parham. Caravan alleged that the defendants traded on inside information and breached a fiduciary duty. The district court entered summary judgment in favor of the defendants on the federal securities claims and dismissed the pendent state securities and fraud claims. At issue on appeal are whether the district court abused its discretion in denying additional discovery and whether Caravan introduced sufficient evidence to preclude summary judgment on the insider trading claim and on the fiduciary duty claim. We hold that the district court did not abuse its discretion. We affirm the summary judgments entered in favor of the defendants on the insider trading claim and on the fiduciary duty claim and affirm the dismissal of the pendent state claims.

## BACKGROUND

In 1980, Parish opened a non-discretionary account for Caravan with Lehman Brothers through Phillip Parham, a retail broker in the San Francisco office of Lehman Brothers. On Parham's recommendation, Caravan invested approximately $27,500 in Nucorp Energy Inc. securities in October and November of 1981. Nucorp was engaged principally in oil and gas exploration and the manufacture and distribution of oil well drilling equipment. Before Caravan's purchases, Nucorp experienced two years of rapid growth in revenue and profits. After August of 1981, its stock prices started to decline. Caravan still held its Nucorp securities when Nucorp filed for protection under Chapter XI of the Bankruptcy Act in July 1982.

In May 1982, Parish filed this action to recover Caravan's losses on the Nucorp securities. The complaint alleges that Frederick Frank, a managing director of Lehman Brothers and an outside director of Nucorp, possessed material nonpublic information about Nucorp's deteriorating financial condition at the time Lehman Brothers was recommending Nucorp securities to its clients. Caravan contends that Lehman Brothers, Frank and their broker Parham traded on material inside information in violation of § 10(b) of the Securities and Exchange Act of 1934 and Rule 10b-5. The complaint also alleges that the defendants became fiduciaries of Caravan and as fiduciaries violated § 10(b) and Rule 10b-5 by failing to disclose material information about Nucorp's financial condition after Caravan's purchases.

On motion for summary judgment, the court held that plaintiffs failed to raise a triable issue of fact on whether the defendants possessed and failed to disclose material nonpublic information about Nucorp before Caravan's purchases. The court denied the plaintiffs' request for additional discovery, entered summary judgment in favor of the defendants on the federal securities law claims and dismissed the pendent state claims. The court also imposed a sanction for plaintiffs' failure to produce Parish's notes on his conversations with Parham.

## DISCUSSION

Caravan contends that the defendants violated § 10(b) of the Securities and

Exchange Act and Rule 10b–5 [1] by trading Nucorp securities without disclosing material inside information known to the defendants. To establish insider liability, plaintiffs must show that defendants (1) intentionally, *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976), (2) misrepresented or failed to disclose, *SEC v. Texas Gulf Sulphur Co.,* 401 F.2d 833 (2d Cir.1968) (en banc), *cert. denied,* 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969), (3) a material fact, *see TSC Industries, Inc. v. Northway, Inc.,* 426 U.S. 438, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976), (4) in connection with the purchase or sale of securities, *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975). Plaintiff must also establish that they relied on the misleading information given by the defendants, *Affiliated Ute Citizens v. United States,* 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972) and that defendants' misleading information proximately caused plaintiffs' loss. Frank's status as an insider is not disputed. The dispute centers on whether Lehman Brothers, in their transactions with plaintiffs, traded on material inside information without disclosing that information in violation of the disclose or abstain principle first articulated in *SEC v. Texas Gulf Sulphur Co,* 401 F.2d 833 (2d Cir.1968) (en banc), *cert. denied,* 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969). *Feldman v. Simkins Industries, Inc.,* 679 F.2d 1299, 1303 (9th Cir.1982).

### 1. Triable Issue of Fact

Caravan contends that summary judgment was inappropriate because the extent of Frank's knowledge of certain information was still unknown. In opposition to defendants' summary judgment motion, plaintiffs requested additional discovery to determine Frank's knowledge of Nucorp's illegal pre-billing practices and his knowledge of the value of Nucorp's Texas oil reserves. Plaintiffs also requested that the district court defer ruling on the summary judgment motion until after discovery was completed in another securities fraud case brought against Nucorp and its directors. The district court refused Caravan's request because plaintiffs already had conducted extensive discovery and had acknowledged that discovery was completed.

■ Under Fed.R.Civ.P. 56(f), the district court has discretion to refuse to rule upon a motion for summary judgment in order to permit additional discovery. The district court did not abuse that discretion by denying additional discovery. Plaintiffs were allowed ample discovery. Frank's deposition testimony alone covers almost 400 pages. Plaintiffs should have been able to discover any relevant evidence about Frank's and the other defendants' knowledge of material inside information. Plaintiffs have presented insufficient evidence of a genuine issue of fact for trial. Fed.R.Civ.P. 56(c).

### 2. Materiality of Frank's Inside Information

Caravan objects to the use of summary judgment to resolve the issue of the materiality of inside information. They contend that a jury should determine the materiality of Nucorp's inventory build-up, Nucorp's proposed sale of two profitable subsidiaries, the value of Nucorp's heavy oil reserves and the illegal prebilling of sales and determine the extent of Frank's knowledge of this information. The district court reviewed the evidence of Frank's knowledge of inside information about Nucorp's deteriorating financial condition and concluded that Frank did not possess mate-

---

**1.** Rule 10b–5, 17 CFR 240.10b–5 (1984) provides:

It shall be unlawful for any person, directly or indirectly, by use of any means or instrumentality of interstate commerce, or of the mails, or any facility of any national securities exchange,

(2) to make an untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, ...

in connection with the purchase or sale of any security.

rial inside information at the time of plaintiffs' purchases.

We have adopted an objective test for materiality. The test has been stated as "whether there is a substantial likelihood that a reasonable investor would consider the fact important in making an investment decision." *Vaughn v. Teledyne, Inc.*, 628 F.2d 1214, 1221 (9th Cir.1980). Summary judgment is normally inappropriate for determining the materiality of undisclosed information. *SEC v. Seaboard Corp.* 677 F.2d 1301, 1306 (9th Cir.1982). The district court should not take the case from the jury "unless the court has engaged in meticulous and well articulated analysis of each item of withheld or misrepresented information," *id.,* and unless reasonable minds could not differ on the determination of the materiality of the withheld information. *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 450, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976).

We review de novo the district court's determination that there was no evidence from which a jury could find that a reasonable investor would consider any of the following matters material: (1) the inventory supply problem; (2) the contemplated sale of subsidiaries; (3) the change in value of oil reserves; or (4) the illegal pre-billing of sales. In evaluating these items of information, we have considered how they would alter the "total mix" of facts available to investors. *Zell v. Intercapital Income Securities, Inc.*, 675 F.2d 1041, 1045 (9th Cir.1982). We have drawn all factual inferences in favor of the plaintiffs. *Barclays Discount Bank Ltd. v. Levy*, 743 F.2d 722, 726 (9th Cir.1984).

### A. Inventory Supply Problem

Plaintiffs introduced evidence that Frank attended a Nucorp Board meeting on August 28, 1981. The minutes of the meeting indicate that the head of Nucorp Supply subsidiary "discussed the reasons for the large inventory build-up at Nucorp Supply and the steps being taken to reduce the risk associated with the build-up." Plaintiffs contend that the inventory build-up

was material in August, before plaintiffs' investments, because the build-up signaled a downturn in sales and the deterioration of Nucorp's financial position. Nucorp's September 24, 1981 prospectus conceded that a decrease in sales would have an adverse effect on its profitability. Plaintiffs further contend that the press release on November 11, 1981, after their investments, "virtually concedes the materiality of that information." That release announced a "sudden over-supply" occasioned by "foreign imports."

Defendants, however, contend that Frank was not aware that the inventory level was a problem until late 1981 or early 1982, after plaintiffs' purchases of Nucorp securities. In his deposition, Frank testified that he was not alarmed by the August report of the inventory level and did not consider it material. He was unaware of the "sudden over-supply" until the press release was available publicly in November. He further testified that he did not consider the oversupply serious until he was given new inventory figures in January 1982. The district court agreed with defendants that the inventory oversupply was not material at the time of plaintiffs' investments in Nucorp securities.

We do not believe that a jury reasonably could find that the August 1981 inventory level was material. The "historically high" inventory figure for Nucorp Supply may have been an early symptom of Nucorp's problems. A reasonable investor, however, would not have considered the inventory level in August 1981 problematic. At the August Board meeting, Nucorp Supply reported that their inventory levels were high because technological improvements were being made and asserted that steps were being taken to reduce the inventory. None of the evidence offered by the plaintiffs discredits this explanation and suggests that the inventory level warned the Board of Nucorp's deteriorating financial condition.

### B. Sale of Subsidiaries

Plaintiffs contend that defendants should have disclosed that Nucorp was exploring

the sale of two of its most profitable subsidiaries. They argue that Nucorp was considering this sale because it needed cash to avert financial problems. As evidence, plaintiffs rely on a cryptic note written by a Lehman Brothers' merger and acquisition partner. That note, in part, reads "Lots of acq. opportunities. Could use cash." Plaintiffs stress the "[c]ould use cash" notation. Plaintiffs also assert that Del-Tex and Maverick Tube represented a high percentage of Nucorp's revenue. They conclude that this evidence considered together shows that Nucorp had serious financial problems that should have been disclosed. Defendants, however, dispute plaintiffs' contention that Nucorp had a cash flow problem. In his deposition, Frank testified that Nucorp was exploring divestiture in order to capitalize on the high value of the subsidiaries.

The district court found that the plaintiffs failed to controvert Frank's testimony that Nucorp wanted to capitalize on the high value of its subsidiaries and held that plaintiffs presented no evidence that Frank knew that the proposed sale indicated cash flow problems. We agree with the district court that there was no evidence from which a jury could have found the proposed divestiture material to a reasonable investor. The evidence offered does not imply that Nucorp had cash flow problems that warranted disclosure.

### C. Value of the Oil Reserves

Plaintiffs contend that Frank knew prior to their investment that Nucorp had overstated the value of its heavy oil reserves in its South Texas fields. Nucorp announced the addition of nine million net barrels of proven and one hundred and twenty-five million net barrels of probable heavy oil reserves in South Texas in a February 1981 press release. In April 1982, Nucorp reclassified its oil reserves from proven to unproven in its 1981 annual financial statement because of high production costs and the decline in the price of oil.

Plaintiffs argue that Nucorp made misleading projections of the production time for the South Texas field. They rely principally on the February 1981 press release announcing the reserves and a confidential report prepared by the lead underwriter. Because the report was found in Frank's files, the plaintiffs argue that he knew about Nucorp's misleading projections. Plaintiffs admit that they would need additional discovery to establish the extent of Frank's knowledge of the value of the reserves.

We agree with the district court that plaintiffs failed to raise a triable issue on the materiality of the value of the oil reserves, and that they were afforded sufficient opportunities for discovery. Even with all inferences drawn in plaintiffs' favor, no evidence in the record shows that the defendants knew that the reserves were overstated prior to plaintiffs' investment.

### D. Pre-billing

Plaintiffs also contend that defendants may have failed to disclose Nucorp's illegal pre-billing practices. The Securities and Exchange Commission filed a complaint against Richard L. Burns and David W. Watt of Nucorp for employing pre-billing of sales to inflate Nucorp's earnings. We agree that this information would have been material if defendants had been aware of this practice. Plaintiffs, however, have presented no evidence that the defendants knew about the illegal pre-billing.

We conclude that this case was appropriate for disposition on summary judgment. The district court carefully analyzed each item of information that defendants allegedly concealed at the time of plaintiffs' purchases. *SEC v. Seaboard Corp.*, 677 F.2d at 1306. Plaintiffs failed to make a supportable case that defendants withheld information that in substantial likelihood a reasonable investor would have considered important in making an investment decision. Plaintiffs are attempting to argue in hindsight that the August 1981 inventory levels and the proposal to sell two subsidiaries were material because they signaled Nucorp's financial deterioration. In our

view, no jury could properly find that this information would have put a reasonable investor on notice that Nucorp was in serious financial condition. We conclude that the withheld information was not material at the time of plaintiffs' purchases. A trial on materiality is unnecessary because reasonable minds would not disagree. *See TSC Industries, Inc. v. Northway, Inc.,* 426 U.S. 438, 450, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976). We affirm the summary judgment entered in favor of defendants on the insider trading claim.

3. Fiduciary Duty Claim

Plaintiffs also contend that defendants violated § 10(b) and Rule 10b–5 by failing to advise plaintiffs of adverse financial information about Nucorp after plaintiffs' investment. As a result, plaintiffs failed to sell their securities. The district court denied further discovery on this claim and entered summary judgment in favor of the defendants.

It is not clear how plaintiff's contention would avoid the hurdle of *Blue Chip Stamps v. Manor Drugs Stores,* 421 U.S. 723, 737–38, 95 S.Ct. 1917, 1926, 44 L.Ed.2d 539 (1975), which precludes a Rule 10b–5 recovery for shareholders who merely decide not to sell their shares because of a misrepresentation or failure to disclose. In any event, plaintiffs' theory is predicated on the existence of a fiduciary relationship between Lehman Brothers and the Caravan trusts. We agree with the district court that there was no showing of such a fiduciary relationship. In the absence of that relationship, Lehman Brothers cannot have been obligated to advise plaintiffs of adverse developments after their purchases that affected their Nucorp securities. *See Chiarella v. United States,* 445 U.S. 222, 230, 100 S.Ct. 1108, 1115, 63 L.Ed.2d 348 (1980) (liability for nondisclosure is premised on a duty to disclose).

A stockbroker is an agent of his client. As an agent he has a duty to give any information relevant to the affairs entrusted to him of which he has notice. Restatement (Second) of Agency § 381

(1958). Caravan, however, had a non-discretionary account with Lehman Brothers. Normally the agency relationship created by a non-discretionary account arises when the client places an order and terminates when the transaction ordered is complete. *Robinson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 337 F.Supp. 107, 111 (N.D.Ala.1971), *aff'd,* 453 F.2d 417 (5th Cir. 1972). The stockbroker assumes no continuing obligation to advise his clients of information that affects their securities. *Leib v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 461 F.Supp. 951, 953 (E.D. Mich.1978).

The district court denied plaintiffs discovery on the fiduciary duty claims because they failed to offer any proof that Lehman Brothers owed a fiduciary duty to the Caravan trusts after the Nucorp purchases. There was no showing that defendants exercised continuing control over Caravan's account or acted as investment counselors. *See Leboce, S.A. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 709 F.2d 605, 607 (9th Cir.1983) (California law imposes a fiduciary duty "where the agent 'for all practical purposes' controls the account"). Because plaintiffs have offered no evidence that Lehman Brothers owed them a continuing duty to advise them about Nucorp developments, the district court properly held that defendants were entitled to judgment as a matter of law on Caravan's purported federal claim based on breach of fiduciary duty.

Finally, plaintiffs make a far-reaching argument that Rule 10b–5 liability should extend to multi-service securities firms whenever they sell the securities of corporations for which they serve as investment bankers or outside directors. They derive this argument from a conflict that they discern between the duty of an insider to disclose material information or abstain from dealing in or recommending a corporation's securities, *see SEC v. Texas Gulf Sulphur Co.,* 401 F.2d 833, 848 (2d Cir. 1968) (en banc), *cert. denied,* 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969), and the fiduciary duty a broker owes to a client, *see Black v. Shearson, Hammill & Co.,* 266 Cal.App.2d 362, 72 Cal.Rptr. 157,

**568**

169–61 (1968). Whatever may be said for or against the rule urged by plaintiffs, there is no reason to invoke it in this case. The conflict it purports to address occurs when an insider withholds material information from a shareholder to whom that insider owes a fiduciary duty. For reasons that we have already fully explained, that factual condition never occurred in this case. We therefore are not inclined to apply here the *per se* rule urged by plaintiffs.

### CONCLUSION

The district court did not err in granting summary judgment against plaintiffs on their two federal claims. The federal claims having been so decided, the district court did not abuse its discretion in dismissing the pendent state claims.

AFFIRMED.