5 F.3d 535
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Richard CLOUTIER, on behalf of himself and all others
similarly situated, Plaintiff-Appellant,
v.
ADOBE SYSTEMS, INC., Defendant-Appellee.
 No. 92-15727.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 10, 1993.
Decided Sept. 9, 1993.
 
 Before: KOZINSKI, THOMPSON, and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Richard Cloutier, class representative for purchasers of Adobe Systems, Inc. ("Adobe") stock between March 6 and May 24, 1990, appeals the district court's grant of summary judgment in favor of Adobe and various officers of the company. The plaintiff alleges the defendants artificially inflated the price of Adobe stock by issuing false or misleading public statements regarding Adobe's prospects and future earnings, in violation of sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (15 U.S.C. Secs. 78j(b) and 78t(a) (1988)) and the Securities and Exchange Commission's Rule 10b-5 promulgated thereunder (17 C.F.R. Sec. 240.10b-5 (1993)). We have jurisdiction under 28 U.S.C. Sec. 1291 and we affirm.
 
 
 3
 * STANDARD OF REVIEW
 
 
 4
 We review de novo a grant of summary judgment, and affirm on any ground supported by the record. In re Apple Computer Sec. Litig., 886 F.2d 1109, 1112 (9th Cir.1989), cert. denied sub nom. Schneider v. Apple Computer, Inc., 496 U.S. 943 (1990).
 
 
 5
 The defendants have the " 'initial responsibility of informing the district court of the basis for [their] motion, and identifying those portions' of the record showing the absence of a genuine issue of fact." Id. at 1113 (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The burden then shifts to the plaintiff "to present evidence sufficient to support a verdict in [his] favor on every element of [his] claim for which [he] will carry the burden of proof at trial." Id. (citing Celotex, 477 U.S. at 322-23). Summary judgment may be granted if the plaintiff's evidence is not " 'sufficiently probative.' " Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986)).
 
 II
 DISCUSSION
 
 6
 It is a violation of Rule 10b-5 "to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." 17 C.F.R. Sec. 240.10b-5. To survive summary judgment, the plaintiff " 'must demonstrate that a particular statement, when read in light of all the information then available to the market, or a failure to disclose particular information, conveyed a false or misleading impression.' " Hanon v. Dataproducts Corp., 976 F.2d 497, 501 (9th Cir.1992) (quoting In re Convergent Technologies Sec. Litig., 948 F.2d 507, 512 (9th Cir.1991)).
 
 
 7
 The statements at issue are (1) the consensus $2 per share estimate by Bruce Nakao, Adobe's chief financial officer, on March 6, 1990; (2) the growth statement by John Warnock, Adobe's CEO, on March 6, 1990; (3) the Nakao $2.10 per share earnings estimate on March 20, 1990; and (4) Warnock's statement of optimism on May 1, 1990.
 
 
 8
 The plaintiff contends that these statements are false and misleading projections or false statements of belief. "In this circuit, a projection or statement of belief may be actionable to the extent that one of three implied factual assertions is inaccurate: '(1) that the statement is genuinely believed, (2) that there is a reasonable basis for that belief, and (3) that the speaker is not aware of any undisclosed facts tending to seriously undermine the accuracy of the statement.' " Id. (quoting Apple Computer, 886 F.2d at 1113.); see also Marx v. Computer Sciences Corp., 507 F.2d 485, 489-90 (9th Cir.1974). The fact that the prediction proves to be wrong in hindsight does not make the statement false or misleading when made. Marx, 507 F.2d at 489-90.
 
 
 9
 The plaintiff apparently concedes that all four statements were genuinely believed.[1] However, he argues that a genuine, material factual dispute exists as to whether there was any reasonable basis in fact for the optimism. He further contends that the defendants failed to disclose facts tending to seriously undermine the projections, namely: (1) the lower earnings estimates in the 1990 Financial Plan, (2) the strained relationship with Apple, (3) the decrease in revenue from IBM and NEC, (4) the delay in projected revenue from Hewlitt-Packard, and (5) the substantial sale of Adobe stock by insiders during the class period.
 
 
 10
 " 'An issuer's public statements cannot be analyzed in complete isolation.' " Id. Although we have not analyzed the four statements here in isolation, we discuss each in turn.
 
 A. Consensus $2 Estimate
 
 11
 On March 6, 1990, Nakao and Warnock met with securities analysts in New York. Nakao's and Warnock's statements were reported over the Dow Jones wire. Nakao stated that "consensus estimates for fiscal 1990 have been at about $2 a share."
 
 
 12
 The plaintiff has failed to show that Nakao's March 6th statement was false or misleading. When he stated that "consensus estimates for fiscal 1990 have been at about $2 a share," he was merely reporting the consensus estimates of others without commenting on the accuracy of the estimates. The plaintiff points to no evidence that consensus estimates were not $2 a share.
 
 B. Warnock's Growth Statement
 
 13
 At the March 6th meeting, Warnock stated that "sustaining [$2.15 to $2.20 a share] earnings growth is possible but that Adobe's future growth will be increasingly tied to trends in the industry. We're getting to the size of company that, if the industry slows down, and the PC [personal computer] market slows, then we're going to slow."
 
 
 14
 Warnock's March 6th statement that "sustaining [$2.15 to $2.20 a share] earnings growth is possible" was not false or misleading. The comment that something is "possible" means only that it may or may not happen (see WEBSTER'S NEW WORLD DICTIONARY 1054 (3d College Ed.1988)). Moreover, the statement was surrounded with cautionary language that future growth was tied to trends in the industry.
 
 C. Nakao's $2.10 Estimate
 
 15
 On March 20th, Adobe announced the results of the first quarter of fiscal 1990 ("Q1"). That day, Warnock, Nakao and other Adobe officers had a telephone conference with more than fifty financial analysts. The following is an excerpt from the conversation with Nakao:
 
 Mr. Burdell of Venture Growth:
 
 16
 Bruce, I'm wondering with the first quarter coming in at the high end of the range on earnings, and the new product momentum you discussed, how comfortable you are with the $2.25 estimates out there?
 
 Mr. Nakao:
 
 17
 Well, Jim, I think you know that most of those estimates are clustering around $2.10 or so, and I guess obviously we'd feel more comfortable with that, and I'm not saying $2.25 is not doable, but I think we just need to wait and see a little bit longer, it's kind of early in the year yet.
 
 
 18
 The context of Nakao's $2.10 estimate, following as it did the public release of actual Q1 results, and Nakao's "comfort" with a definite number without qualifying language of "consensus estimates" or "possibilities," makes the $2.10 estimate the crux of the case. The projection is actionable if it violates any of the three Apple Computer conditions.
 
 1. The First Apple Computer Condition
 
 19
 The plaintiff concedes the statement was genuinely believed, so the first Apple Computer condition is satisfied.
 
 2. The Second Apple Computer Condition
 
 20
 As to the second Apple Computer condition, the plaintiff contends Nakao had no reasonable basis for the $2.10 per share earnings estimate.
 
 
 21
 In Apple Computer, we held that no reasonable basis existed for the speaker to believe the truth of a prediction if the source of the optimism was unrealistic, and not merely uncertain. Apple Computer, 886 F.2d at 1117. The question, therefore, is whether there was a realistic basis for Nakao's $2.10 prediction.
 
 
 22
 Historically, Adobe's earnings had increased incrementally each quarter after the first quarter in a fiscal year. The first had always been Adobe's weakest quarter. In 1987, the year-end earnings were 5.4 times greater than the first quarter; in 1988 they were 5.8 times greater; in 1989 they were 4.8 times greater. Based on these growth patterns, the year-end earnings for fiscal 1990 would have been, respectively, $2.59, $2.78 and $2.30 per share--all higher than Nakao's projection of $2.10.[2]
 
 
 23
 The plaintiff contends that Nakao and the defendants had no reason to believe that the historical pattern would hold in 1990. The defendants, however, present four facts which show they had reason to believe that earnings in subsequent quarters would increase and, therefore, Nakao's $2.10 figure was not unrealistic.
 
 
 24
 a. Adobe's 1990 Q1 Results
 
 
 25
 Adobe's 1990 Q1 results were its best ever. Based on quarterly earnings patterns, it was realistic for Nakao to believe that Q2 earnings would be higher than the results for Q1, and that the last two quarters would be even higher. The plaintiff challenges this on the basis that increased costs for the fiscal year would undercut earnings. He points out that Adobe expected to hire new employees during the year, anticipated higher marketing and advertising expenses, and knew there would be higher costs associated with anticipated growth in direct sales revenues.
 
 
 26
 We reject these contentions. They do not demonstrate that Nakao's $2.10 projection was unrealistic. Costs associated with Q1 results were not abnormally low compared to the actual costs of the previous six quarters--all came to about 56% of total revenue. The expected increased hiring did not occur, deferred marketing expenses amounted to only $.02 a share, and it was not unrealistic to assume that expenses attributable to increased direct sales would have the increased sales to offset the higher costs.
 
 
 27
 Even assuming, however, that Adobe was aware higher than usual costs would be incurred for the fiscal year ending November 1990, the following three bases for the belief that the $2.10 projection was reasonable establish, beyond any genuine dispute of a material fact, that the projection was realistic.
 
 
 28
 i. Hewlett-Packard ("HP") Had Just Become a Major Customer
 
 
 29
 Adobe had reason to believe the Q1 figure of $0.48 would increase in the following quarters because HP became a new customer in Q1. The undisputed facts reveal that there was a major untapped market for HP printers, and the PostScript interpreter performed many more functions than HP's own interpreter. Adobe's optimism about HP was borne out: HP generated additional revenue of over $7 million for fiscal 1990, and one year later Apple and HP were Adobe's largest customers. Nakao could realistically expect higher revenues for Adobe given the new relationship with HP.[3]
 
 
 30
 ii. IBM's March 5, 1990 Endorsement
 
 
 31
 It was reasonable for the defendants to believe that IBM's announcement that Adobe's PostScript would be standard in all IBM systems would cause Adobe's product to be increasingly viewed as the industry standard. Given this circumstance, it was not unrealistic to believe that fiscal 1990 earnings would increase as Adobe's product was adopted by more OEMs. The reasonableness of this belief was supported by an analyst's report from Shearson Lehman Hutton and the market's response to IBM's announcement--the six-point surge in the stock price the following day, at the outset of the class period.
 
 
 32
 The plaintiff argues that the failure to quantify expressly the effect of IBM's announcement on revenues rendered the use of the IBM endorsement in a specific earnings projection unreasonable, or at least requires a trial to resolve the question. We reject this argument. There is no authority requiring such quantification. Indeed, Apple Computer holds that the basis for the prediction need not be certain, but only realistic. Apple Computer, 886 F.2d at 1117.
 
 
 33
 iii. Adobe's Four New Products
 
 
 34
 Adobe had launched four new products that would produce additional revenues in the last three quarters of fiscal 1990. No evidence in the record shows that Adobe did not reasonably believe its new products would generate higher earnings. See Hanon, 976 F.2d at 501. Optimism for the earning potential of these new products was later substantiated by the profits they generated in fiscal 1990. Adobe Photoshop generated $6.5 million; Adobe Type Manager Windows Version generated $1.5 million; Adobe Illustrator 1990 Revision generated $5 million; and a PostScript cartridge available to consumers owning the HP LaserJet II printer generated $3 million.
 
 
 35
 In sum, any one of the three undisputed facts showing Adobe's revenues would increase in fiscal 1990 provide a reasonable and realistic basis for Nakao's $2.10 earnings estimate. These facts render any factual dispute about the alleged understatement of Adobe's costs in Q1 immaterial. Adobe's "implied factual assertion" that there was a reasonable basis for the $2.10 estimate was not inaccurate. See Hanon, 976 F.2d at 501.
 
 
 36
 We conclude that the plaintiff has failed to present a genuine issue of a material fact to dispute that there was a reasonable basis for Nakao's belief in his $2.10 per share earnings estimate.
 
 3. The Third Apple Computer Condition
 
 37
 As to Apple Computer 's third condition, the plaintiff contends that Nakao was aware of five undisclosed facts which tended to seriously undermine the accuracy of his $2.10 per share estimate.
 
 
 38
 a. The plaintiff first contends Adobe's 1990 Financial Plan included an estimate of fiscal 1990 earnings of only $1.47. This estimate, however, was an internal projection. It was designed as a basis for calculating employee bonuses and internal operating expenditures. Financial Plan projections in previous years had never been publicly released and were intended solely for internal use.
 
 
 39
 "A corporation may be called upon to make confidential projections for a variety of sound purposes where public disclosure would be harmful." In re Lyondell Petrochemical Co. Seq. Litig., 984 F.2d 1050, 1052-53 (9th Cir.1993). Indeed, in Vaughn v. Teledyne Inc., 628 F.2d 1214, 1221 (9th Cir.1980), we observed: "It is just good general business practice to make such projections for internal corporate use. There is no evidence, however, that the estimates were made with such reasonable certainty even to allow them to be disclosed to the public." Vaughn, 628 F.2d at 1221 (emphasis in original).
 
 
 40
 There is no evidence from which a reasonable jury could infer that disclosure of the $1.47 projection in the Financial Plan would have seriously undermined Nakao's $2.10 projection and reduced Adobe's stock price. The facts show the Plan estimate was completely uncertain: it had been historically inaccurate by 50%, it was 50% off by the end of the first quarter, and ended up 25% off by the end of fiscal 1990.
 
 
 41
 Attempting to rebut the uncertainty argument, the plaintiff points to evidence showing that the 1990 Financial Plan was carefully prepared, had been approved by the Board of Directors, had a relatively small contingency reserve compared to previous years, and was the first annual plan under Adobe's new management team. The defendants dispute the meaning of some of this evidence, but this dispute does not create a genuine issue of material fact. The evidence proffered by the plaintiff only shows that the 1990 plan was not as conservative as previous years, not that the market would have used it to discount Nakao's $2.10 projection per share estimate.
 
 
 42
 b. As his next challenge to the $2.10 projection, the plaintiff contends that at the time it was made, Adobe's largest customer, Apple, was demanding lower royalty rates, thereby rendering revenue amounts from Apple highly uncertain. We have consistently rejected similar arguments. In Apple Computer, we held that the defendants' knowledge of facts showing that the company's "prospects were uncertain ... [was] insufficient to support liability as a matter of law." 886 F.2d at 1117 (emphasis added). In Hanon, we held that "[d]iscussion among management staff regarding potential action to be taken sometime in the distant future is not an item appropriately made a part of public disclosure because of its speculativeness." Hanon, 976 F.2d at 506. Within the constraints imposed by Basic Inc. v. Levinson, 485 U.S. 224 (1988) (disclosure of merger negotiations), highly speculative discussions among companies are also not appropriate for disclosure. Cf. id. at 232 n. 9 (declining to address "other kinds of contingent or speculative information, such as earnings forecasts or predictions.")
 
 
 43
 The fact that Apple was demanding lower royalty rates does not necessarily mean that Adobe's earnings would be lower. For example, a royalty reduction might be offset by increased sales. Further, there is no evidence that either Adobe or Apple believed the royalty reduction would actually happen, either in fiscal 1990, in which Apple was contractually bound to continue to pay the rate prevailing on March 20, 1990, or thereafter. This undisclosed fact at most shows some uncertainty of future revenues, which is insufficient to meet the third Apple condition. See 886 F.2d at 1117.
 
 
 44
 c. The plaintiff's third challenge to the $2.10 per share estimate is that the defendants knew that Q2 revenues from two of Adobe's OEMs would be significantly under the 1990 Financial Plan projections, and failed to disclose these projections or the shortfall. The evidence shows that Adobe knew in November that NEC was replacing its old PostScript laser printer with a new model in March and that there were serious concerns about the market competitiveness of the new model. Further, Adobe knew by February 26, 1990 that NEC laser printer sales had declined 22% from Q1. Adobe also knew when it prepared its 1990 Plan that sales of IBM's PostScript laser printers would be lower in Q2 because IBM was introducing a new PostScript laser printer in the spring of 1990.
 
 
 45
 None of these facts seriously undermines the accuracy of the $2.10 prediction. They only pertain to a shortfall in Q2. Even given the undisclosed Q2 shortfall, Adobe's annual revenues from IBM and NEC could still have reached the necessary level to support the predicted $2.10 figure. Further, Adobe's overall revenues would not have suffered had competitors of IBM and NEC sold more PostScript-based products in Q2 or later. Sales by other OEMs had covered shortfalls in predicted revenue in prior years. On March 20, Adobe had no way of knowing that this wouldn't happen again. Lower than anticipated sales in a small percentage of Adobe's business in one quarter does not tend to seriously undermine the accuracy of a prediction that pertains to earnings from all revenue sources for the entire fiscal year.
 
 
 46
 d. The plaintiff's fourth challenge to the $2.10 estimate is that HP's shipments of PostScript products were delayed. This contention lacks merit. Although Adobe knew and did not disclose that Q2 revenues from HP would be lower than expected because introduction of HP's new PostScript cartridge had been delayed, the strong possibility that the revenues would come later in the year means that this undisclosed fact did not tend to seriously undermine the Nakao $2.10 estimate.
 
 
 47
 e. In support of his fifth challenge to the $2.10 estimate, the plaintiff contends that the fact top executives of Adobe were selling huge blocks of stock during the class period tends seriously to undermine the accuracy of Nakao's prediction.
 
 
 48
 This contention conflates the false representation and scienter elements of the plaintiff's case. The undisclosed fact that insiders were selling large blocks of stock is material evidence of scienter. "[I]nsider trading in suspicious amounts or at suspicious times is probative of bad faith and scienter." Apple Computer, 886 F.2d at 1117. However, before the element of scienter becomes relevant, the plaitniff must establish that the defendant made an "untrue statement of a material fact or [omitted] to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading." 17 C.F.R. Sec. 240.10(b)-5. As we have previously stated, the defendants did not make or omit such a statement.
 
 D. Warnock's May 1 Statement of Optimism
 
 49
 Warnock's May 1st statement is neither false nor misleading. He stated, "We think we have our challenges throughout the coming year, but basically feel quite optimistic." In fact, the earnings for fiscal 1990 were substantially higher than fiscal 1989, growing from $1.55 per share to $1.87 per share. Warnock had reasonable grounds for optimism, especially in light of the potential growth in royalties from HP. As discussed above, no undisclosed facts known to Adobe tended to significantly undermine the optimism.
 
 III
 CONCLUSION
 
 50
 Taken together, the four statements by Adobe employees during the class period do not violate sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (15 U.S.C. Secs. 78j(b) and 78t(a) (1988)) nor the Securities and Exchange Commission's Rule 10b-5 promulgated thereunder (17 C.F.R. Sec. 240.10b-5 (1993)). The projections and statements were genuinely believed, the belief was reasonable, and no undisclosed material facts tended to seriously undermine the projections or expressions of optimism. Summary judgment was appropriate.
 
 
 51
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Because the plaintiff's argument is confined to the second and third conditions set forth in Hanon and Apple Computer, we presume he concedes that the first condition is not at issue. See Officers for Justice v. Civil Service Comm'n, 979 F.2d 721, 726 (9th Cir.1992) ("We will not ordinarily consider matters on appeal that are not specifically and distinctly raised and argued in appellant's opening brief.") (quotation omitted), cert. denied sub nom. San Francisco Police Officers Ass'n v. City and County of San Francisco, 113 S.Ct. 1645 (1993); Wilcox v. Commissioner, 848 F.2d 1007, 1008 n. 1 (9th Cir.1988) (issue deemed waived if it has not been raised on appeal)
 
 
 [2]
 The plaintiff contends that historical trends generally are not a reasonable basis for prediction. As a matter of law, this is not the case. See Apple Computer, 886 F.2d at 1117-18 (court considered historical earnings and operational results in finding a reasonable basis for a prediction); G & M, Inc. v. Newbern, 488 F.2d 742, 745-46 (9th Cir.1973) (opinion based on sound historical basis is not actionable in the absence of gross disparity between prediction and fact or failure to disclose material facts)
 
 
 [3]
 Adobe's failure to disclose that it had expected HP to begin shipping printers with PostScript as early as Q1 is discussed below, in reference to Apple Computer condition three