688 So.2d 33 (1996)
Henry Macon BRADFORD
v.
Martin J. O'NEILL, Jr. M.D., et al.
Nos. 95-CA-2449, 95-CA-2450.
Court of Appeal of Louisiana, Fourth Circuit.
November 20, 1996.
Rehearing Denied February 27, 1997.
*34 J. Paul Demarest, Michelle R. Demarest, Favret, Demarest, Russo & Lutkewitte, New Orleans, for Plaintiff/Appellee.
Donna G. Klein, Monica A. Frois, McGlinchey Stafford Lang, New Orleans, Appellate Attorneys, for Defendants/Appellants.
Before CIACCIO, ARMSTRONG and LANDRIEU, JJ.
LANDRIEU, Judge.
This suit arises from a medical malpractice claim filed by Henry Bradford against Dr. Martin O'Neill; his insurer, Louisiana Medical Mutual Insurance Company (LMMICO); and Dr. Jan McClanahan. After a trial on the merits, Dr. O'Neill was found totally liable for Mr. Bradford's injuries. Judgment was rendered against Dr. O'Neill and LMMICO. We reverse.

FACTS
Mr. Bradford was suffering from a severe coronary artery disease. He was referred to Dr. O'Neill, a cardiovascular thoracic surgeon, who recommended surgery. Bradford was admitted to Humana Hospital and, during his preoperative workup, reported that he had a history of previous abdominal surgery with peptic ulcer disease which was entered into his medical records. The fact that Bradford had undergone previous abdominal surgery was subsequently confirmed by a gastroenterologist who performed an endoscopy which revealed a "post-operative stomach with Billroth II anastomosis."
Mr. Bradford underwent a three vessel coronary by-pass performed by Dr. O'Neill, who was assisted by general surgeon Dr. McClanahan. Part of the procedure for the bypass required the placement of pacemaking wires.[1]
Following the surgery, Mr. Bradford began to experience postoperative complications requiring exploratory abdominal surgery. It was discovered that the cardiac pacing wires were in an area directly above the colon which was found to be perforated. The injured portion of the colon was removed and a temporary double colostomy was performed. After this surgery, Bradford continued to suffer severe nausea and vomiting for which he was hospitalized three times. He then was hospitalized again to have his colostomy closed.
As a result of his injuries, Bradford sued Drs. O'Neill and McClanahan alleging that they had improperly inserted the pacemaker wires which resulted in the perforation of his *35 transverse colon. The claims were first submitted to a Medical Review Panel as required by La.Rev.Stat.Ann. 40:1299.41 et seq (West 1992 & Supp.1996). The Panel found that the doctors' actions were not below the applicable standard of care.
Nevertheless, Mr. Bradford filed suit against the doctors for the negligently placed the pacemaker wires. He additionally claimed that Dr. O'Neill was responsible for the misplacement of the wires, irrespective of which doctor actually placed the wires, because he was the primary surgeon and deviated from the standard of care by not informing Dr. McClanahan of Mr. Bradford's prior abdominal surgeries.
The jury found Dr. O'Neill fully liable for Mr. Bradford's injuries and found Dr. McClanahan free of fault. The jury awarded damages in the amount of $75,000.00 for past pain and suffering; $12,500.00 for future pain and suffering; $3,000.00 for disability and disfigurement; and $119,366.27 for past medical costs. Judgment was rendered against Dr. O'Neill and LMMICO in solido for $100,000.00 and against the Louisiana Patient's Compensation Fund for $109,866.27, with interest from November 21, 1991.
Dr. O'Neill and LMMICO assert that the trial court failed to charge the jury that a physician cannot be vicariously liable for the actions of another physician in the absence of a relationship as defined in La.Civ.Code art. 2320, infra.
Dr. O'Neill and LMMICO also assert that the trial court erred as a matter of law in finding Dr. O'Neill negligent because:
1. Dr. McClanahan, who was found not negligent, passed the pacemaker wires;
2. Dr. O'Neill is not legally responsible for Dr. McClanahan's actions; and
3. The applicable standard of care did not require Dr. O'Neill to pass the pacemaker wires nor did it require that he tell Dr. McClanahan about Mr. Bradford's prior abdominal surgery.
Mr. Bradford asserts that the damages awarded for past pain and suffering, future pain and suffering, and disability and disfigurement are excessively low.

ASSIGNMENT OF ERROR NO. 1
Dr. O'Neill and LMMICO argue that the trial court erred in failing to charge the jury that a physician cannot be held liable for another physician's actions without the requisite supervisory relationship. La.Code Civ. Proc.Ann. art. 1793(C) (West 1990) states that:
A party may not assign as error the giving or the failure to give an instruction unless he objects thereto either before the jury retires to consider its verdict or immediately after the jury retires, stating specifically the matter to which he objects and the grounds for his objection. If he objects prior to the time the jury retires, he shall be given an opportunity to make the objection out of the hearing of the jury.
The record indicates that Dr. O'Neill did not timely object to the jury charges. Therefore, this issue is not properly before us.

ASSIGNMENT OF ERROR NO. 2
Dr. O'Neill and LMMICO contend that the trial court erred as a matter of law in finding Dr. O'Neill negligent. However, the trial transcript sheds no light on the basis for the jury's finding of negligence. The plaintiff, in brief, presented three theories for assigning liability: (1) Dr. O'Neill passed the wires; (2) Dr. McClanahan passed the wires and Dr. O'Neill is vicariously liable for Dr. McClanahan's actions; and (3) Dr. O'Neill is independently liable because a) if he did not pass the wires he should have done so, and, in the alternative, b) if Dr. McClanahan passed the wires, Dr. O'Neill had a duty to tell him about Mr. Bradford's previous abdominal surgeries. Each theory will be addressed as a possible basis for finding Dr. O'Neill liable.

Passing of the Pacemaker Wires
To prove medical malpractice, the plaintiff must establish by a preponderance of the evidence: the standard of care, a breach of that standard, causation, and damages. La.Rev.Stat.Ann. 9:2794 (West 1991 & Supp.1996). The applicable standards of knowledge, skill, and care are determine from testimony of expert witnesses who are members of the pertinent specialty and who are qualified to testify on the specific subject *36 at issue. Pfiffner v. Correa, 94-0924 (La.10/17/94), 643 So.2d 1228.
Dr. Robert Darryl Fisher, an expert in general and cardiovascular surgery, testified that there was no indication that Mr. Bradford needed temporary pacemaker wires and that the implantation of the wires through the subcostal approach was a breach of the appropriate standard of care. He also testified that, in all probability, the wire caused Mr. Bradford's injury.
Dr. William Walker, an expert in general, vascular, and thoracic surgery, testified that the temporary installation of the pacemaker wires in this case was not a breach and that it was not malpractice to pass pacemaker wires in every by-pass. However, he stated that the placement of the wires with a faulty technique was a breach from the acceptable standard of care and that Mr. Bradford's resulting injuries were a direct result of the faulty passage of the wires.
Dr. Howard A. Nelson, Jr., an expert in general surgery, testified that wires are passed in the same manner at all the by-pass surgeries he has attended at Charity Hospital, Ochsner Hospital, and West Jefferson Hospital. He found no breach in the manner in which the wires were passed.
Dr. Paul Michael McFadden, an expert in cardiovascular surgery, testified that he saw no malpractice in how the wires were run. He stated that he places temporary wires in every patient who has a by-pass in order to stabilize the heartbeat and that he routinely passes wires in the same manner as they were passed during Mr. Bradford's by-pass.
When there are contradictory expert opinions concerning compliance with the standard, the reviewing court will give great deference to the conclusion of the fact-finder. Broadway v. St. Paul Ins. Co., 582 So.2d 1368, 1372 (La.App. 2d Cir.1991). We will, therefore, assume a trial court finding that the method in which the pacemaker wires were passed was a breach of the applicable standard of care. Accordingly, whichever doctor passed the wires breached the standard of care and committed medical malpractice.
Who passed the wires is a question of fact for the jury to determine. A court of appeal may not set aside a jury's finding of fact in the absence of manifest error or unless it is clearly wrong and "where two permissible views of the evidence exists, the fact finder's choice between them cannot by manifestly erroneous or clearly wrong." Stobart v. State Through DODT, 617 So.2d 880, 882-883, (La.1993). Additionally, the manifest error rule applies not to findings of fact, per se, but also to inferences drawn from facts. Gibson v. Winn Dixie Louisiana, Inc., 426 So.2d 731 (La.App. 3d Cir.1983).
For the jury to find Dr. O'Neill 100% liable and Dr. McClanahan 0% liable under the theory that the passage of the wires was the basis for finding negligence, the jury must have concluded that Dr. O'Neill had passed the wires.
The Stobart test requires that the reviewing court must do more than simply review the record for some evidence which supports or controverts the trial court's finding. Stobart v. State Through DODT, 617 So.2d 880. Therefore, the appellate court must review the record in its entirety to determine if the trial court's finding was clearly wrong or manifestly erroneous.
A review of the trial transcript and the evidence presented reveals that there was no definitive evidence as to which doctor actually passed the wires. However, when asked who passed the wires, Dr. O'Neill testified "It's my recollection that Dr. McClanahan did, but it's not a certain recollection. And it was my recollection at the time when I heard about the problem that that was what happened." When asked, "In other words, standing at the operating table, it would probably be him [Dr. McClanahan] that would have passed the wires because it would have been a right handed pass, is that right?," Dr. O'Neill responded affirmatively.
Dr. McClanahan testified that it is the usual routine for him to pass the wires, but he did not remember this particular surgery.
During the trial Dr. Fisher was asked, "Doctor, what wasis it your opinion that the method [-] from the records [-] can you tell what doctor passed the pacing wires in *37 this case?" Dr. Fisher responded, "I can not tell from the hospital records, it is myfrom the deposition of Dr. O'Neill and Dr. McClanahan [] conclu[sion] it was Dr. McClanahan who did it[;] I don't think any of them was one hundred percent certain." When reading the entirety of the record, the inference is clear that it was Dr. McClanahan who passed the wires and not Dr. O'Neill.
Additionally, during oral argument, Mr. Bradford's counsel conceded that Dr. McClanahan passed the wires. Therefore, we conclude that there is no evidence to support a finding that Dr. O'Neill passed the wires and such a finding by the jury would be clearly wrong.
Vicarious Liability
Another theory set forth for Dr. O'Neill's liability is that he was vicariously liable for the actions of Dr. McClanahan during this surgery. La.Civ.Code Ann. art. 2320 (West 1971 & Supp.1996) states:
Masters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed.
Teachers and artisans are answerable for the damage occasioned by their scholars or apprentices, while under their superintendence.
In the above cases, responsibility only attaches, when the masters or employers, teachers and artisans, might have prevented the act which caused the damages, and have not done it.
The master is answerable for the offenses and quasi-offenses committed by his servants, according to the rules which are explained under the title: Of quasi-contracts, and of offenses and quasi-offenses.

In the case at hand, the relationship between the doctors was that of primary doctor and assisting doctor. Dr. McClanahan did not work for Dr. O'Neill; Dr. McClanahan's services were paid directly by Mr. Bradford. Dr. McClanahan was not a student or resident over whom Dr. O'Neill had supervisory authority.
It is noted that Dr. O'Neill testified as follows:
Well, I am the primary surgeon. I am responsible for everything that happens. And in that sense, if you want to say I was his supervisor, fine. I would just say that it was my responsibility for the operation.
Also, Dr. Walker opined that Dr. O'Neill, as the lead surgeon, was responsible for whatever went on in the operation. However, an opinion that a person has general responsibility for an action does not make that person legally liable for any resulting injury.
Considering that there was no jury charge that Dr. O'Neill could not be held vicariously liable for Dr. McClanahan's negligent passing of the pacemaker wires, it is possible that the jury found Dr. O'Neill guilty of medical malpractice for this reason. However, to hold Dr. O'Neill vicariously liable under the facts at hand is legal error. Additionally, since the jury found that Dr. McClanahan was not negligent, then it had no foundation for finding Dr. O'Neill vicariously liable.
Dr. O'Neill's Independent Liability
Mr. Bradford argues that the standard of care required Dr. O'Neill to pass the wires. La.Rev.Stat. 9:2794 requires the plaintiff to prove the degree of care ordinarily practiced within the involved medical specialty. That is, Mr. Bradford had the burden of showing that it is the ordinary practice, in a by-pass surgery, for the cardiovascular surgeon to pass the pacemaker wires and not the general surgeon. A review of the transcript indicates that he did not meet this burden.
Dr. Fisher, who is licensed in Oklahoma, stated that he would never allow an assistant to place the temporary wires, and that, generally speaking, is the practice in Oklahoma. He, however, later agreed that a board certified general surgeon can be trained to pass pacing wires. Dr. Walker, who practices in Houston, testified that a board certified, trained general surgeon such as Dr. McClanahan has the technical skill to pass the wires.
Dr. McFadden, who practices locally at Oschner Hospital, stated that he saw no problem with a general surgeon passing temporary wires during a by-pass. Dr. Richard Christopher Vallette, who is a general surgeon *38 in several hospitals in the Greater New Orleans area, testified that he has passed temporary wires for Dr. O'Neill as well as other doctors.
Dr. McClanahan testified that he has assisted in about a hundred by-pass surgeries and usually was the doctor who passed the temporary wires.
Dr. O'Neill testified that:
[I]t's kind of ridiculous to say that a general surgeon who is in the abdomen much more than I am is less qualified to pass a pacing wire to avoid the abdomen. I mean, Dr. McClanahan, Dr. Vallette, those people are in the abdomen much more than I am. I mean, they're very familiar with that anatomy. I mean, I don't see how it's a problem to have somebody that's in the abdomen pass a pacing wire that's adjacent to the abdomen. And in most surgical training programs, the residents do it, most of whom aren't even board-certified in general surgery. It is not a major part of the procedure. And to make into such, I think, is an exaggeration.
Therefore, Mr. Bradford did not establish that it is the ordinary practice for the cardiovascular surgeon to pass the wires and that allowing a board certified trained general surgeon to do so would be out of the ordinary and substandard practice.
Mr. Bradford additionally argues that Dr. O'Neill was independently liable because he had a duty to inform Dr. McClanahan of Mr. Bradford's prior abdominal surgeries. This argument fails for two reasons. First, Dr. McClanahan had access to Mr. Bradford's medical records. The Progress Notes, dated 3/27/91, stated that Mr. Bradford had a past history of gastric surgery and gastrointestinal bleeding. And in the notes of 3/29/91, it was recorded that Mr. Bradford had a post-operative stomach with Billroth II, anastomosis. Thus, Dr. McClanahan could have known of Mr. Bradford's surgical history if he had read the medical record, and he did not have to rely solely on Dr. O'Neill for this information.
Second, there was no testimony presented that Dr. O'Neill had a duty to appraise Dr. McClanahan of the previous surgeries. Dr. Walker testified that it would have been quite reasonable for Dr. O'Neill not to have told Dr. McClanahan about the prior surgery before the by-pass, although he also stated that Dr. O'Neill could have cautioned him during the surgery.
Dr. McFadden testified that knowledge of Mr. Bradford's previous surgery would have been immaterial. He explained that typically in an antecolic Billroth II procedure, "a loop of the small bowel is brought up in front of the colon and the bowel is connected to the stomach. So in that particular situation the colon should be brought up towards the back bone and towards the surface of the abdomen." Therefore, even if Dr. McClanahan knew of Mr. Bradford's prior surgeries, he would not have expected the colon to be placed so far in front.
Dr. Vallette, who examined Mr. Bradford after the surgery, testified that knowledge of Mr. Bradford's previous surgeries would not have precluded him from doing the surgery or influence the way in which he passed the wires.
Dr. McClanahan testified that was not necessary to have known of Mr. Bradford's prior surgery because it would not have changed the technique he used to pass the wires. He stated that there is no safer method than the one he used. He said that he might have tried to pass the wires slightly higher but that he had passed the wires as close to the rib cage as possible and could not have passed them at a shallower angle than he did.
Mr. Bradford did not prove Dr. O'Neill's failure to apprise Dr. McClanahan of the previous stomach surgeries was medical malpractice. He did not prove that telling the assisting doctor about previous abdominal surgeries, information that was readily available in the patient's chart, is the degree of care ordinarily practiced by cardiovascular surgeons performing a by-pass.
Also, a plaintiff in a medical malpractice action must prove a causality between the injury and the alleged incident of malpractice with adequate evidence. Pfiffner v. Correa, 94-0924 (La. 10/17/94), 643 So.2d at 1230; La.Rev.Stat. 9:2794(A)(3). *39 So, even if Mr. Bradford had shown such a duty existed, he did not prove that Dr. O'Neill's reticence was a cause of his injury.

ASSIGNMENT OF ERROR NO. 3
Mr. Bradford alleges that it was clearly wrong for the jury to award him only $75,000.00 for past pain and suffering and $3,000.00 for disability and disfigurement. Because we have found that Dr. O'Neill was not liable for Mr. Bradford's injuries, that issue need not be addressed.
For the above reasons, we find that Dr. O'Neill was not liable for Mr. Bradford's injuries and reverse the trial court's judgment against Dr. O'Neill and LMMICO.
REVERSED.
NOTES
[1] These wires are small insulated multi-braided wires that are implanted onto the surface of the heart, brought out through the skin, and attached to a pacemaker box at bedside.