700 So.2d 1160 (1997)
Julius D. TAPLIN
v.
Dr. Arnold LUPIN and St. Charles General Hospital Auxiliary.
No. 97-C-1058.
Court of Appeal of Louisiana, Fourth Circuit.
October 1, 1997.
Wade A. Langlois, III, Kym K. Keller, Windhorst, Gaudry, Ranson, Higgins & Gremillion, Gretna, for Dr. Donald A. Kuebel and NME Hospitals, Inc., d/b/a St. Charles General Hospital.
Thomas P. Johnson, III, Gaithersburg, MD, for Plaintiff.
Before SCHOTT, C.J., and BYRNES and MURRAY, JJ.
SCHOTT, Chief Judge.
On the application of St. Charles General Hospital and Dr. Donald Kuebel we grant certiorari in order to consider the validity of a judgment of the trial court denying their motion for summary judgment. The issue is whether, in this medical malpractice case, plaintiff can prevail under the holding in Pfiffner v. Correa, 643 So.2d 1228 (La.1994), even though he is unable to produce an expert witness to testify as to the applicable standard of care, its breach and causation.
Plaintiff alleged that defendant's medical malpractice caused the death of his mother, Beulah Glenn, when they discharged her from their care even though she was weak, tired, and showed signs of distress. She was a patient of Dr. Arnold Lupin and had been hospitalized at St. Charles General Hospital on several occasions. She was eighty-two years old and both of her legs were amputated below the knee. At approximately 7:15 p.m. on June 19, 1992, she was taken, via ambulance, to St. Charles General Hospital. She indicated she was feeling weak and tired, but she denied any shortness of breath. Dr. Kuebel, the emergency room physician on duty that evening, examined and treated her. *1161 Lab tests and an EKG were ordered and performed. The EKG indicated a left bundle branch block and a heart rate of 107. These findings were unchanged from her previous hospitalization. She was discharged from the emergency room at approximately 9:05 p.m. after Dr. Kuebel consulted with Dr. Persich, Dr. Lupin's associate who was on call that evening.
By 10:12 p.m., Ms. Glenn's condition began to change. She called the emergency medical services complaining of shortness of breath. She was transported to United Medical Center where she was diagnosed as being in moderate respiratory distress, diaphoretic, with bilateral chest wheezes and a heart rate of 130. She was admitted to United Medical Center where she received extensive treatment. However, she died of respiratory failure on June 21, 1992. A medical review panel, convened under the requirements of the Medical Malpractice Act, found the defendants did not breach the standard of care required.
Through discovery methods, the defendants have requested the names of plaintiff's expert witnesses who will testify the defendants breached the standard of care as required by La. R.S. 9:2794. The only expert witness whom the plaintiffs have identified is Thomas Rucker, a registered nurse. Defendants, thereafter, filed a motion for summary judgment, arguing plaintiff will not be able to meet his burden of proof as he has not produced any expert witnesses who will be able to testify the defendants breached the standard of care in their treatment of Ms. Glenn. The trial court denied the motion for summary judgment and defendants have invoked this court's supervisory jurisdiction for review.
Defendants argue the trial court erred when it denied their motion for summary judgment because the plaintiff cannot meet the statutory burden of proof required by La. R.S. 9:2794. After five years of extensive discovery, the plaintiff does not have an expert witness that will be able to testify the defendants breached the standard of care required under La. R.S. 9:2794. Plaintiff opposed the motion for summary judgment suggesting that he does not need expert witnesses to meet his burden of proof. He argues that a lay jury can make a reasonable determination as to the standard of care and treatment Ms. Glenn received on June 19, 1992.
La. R.S. 9:2794 provides in pertinent part:
A. In a malpractice action based on the negligence of a physician licensed under R.S. 37:1261 et seq., a dentist licensed under R.S. 37:751 et seq., an optometrist licensed under R.S. 37:1041 et seq., or a chiropractic physician licensed under R.S. 37:2801 et seq., the plaintiff shall have the burden of proving:
(1) The degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians, dentists, optometrists, or chiropractic physicians licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances; and where the defendant practices in a particular specialty and where the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, then the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians, dentists, optometrists, or chiropractic physicians within the involved medical specialty.
(2) That the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill.
(3) That as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred.
Thus, to prove medical malpractice, the plaintiff must show, by a preponderance of the evidence, the applicable standard of care, a breach of that standard of care by the defendants, causation and damages. Bradford v. O'Neill, 95-2449 (La.App. 4th Cir. 11/20/96), 688 So.2d 33, writ denied, 97-0803 (La.5/9/97), 693 So.2d 769.
In Pfiffner v. Correa, 94-0924, 94-0963, 94-0992 (La.10/17/94), 643 So.2d 1228, 1230, the court held that a plaintiff can succeed in *1162 a medical malpractice case when a "defendant/physician or a defense expert testifies regarding the standard of care, and the objective evidence at trial is such that a lay jury can infer negligence from the facts." However, a plaintiff must establish a causal connection between a defendant's negligence and the plaintiff's injuries. Id. The court went on to hold that
expert testimony is not always necessary in order for a plaintiff to meet his burden of proof in establishing a medical malpractice case. Though in most cases, because of the complex medical and factual issues involved, a plaintiff will likely fail to sustain his burden of proving his claim under LSA-R.S. 9:2794's requirements without medical experts, there are instances in which the medical and factual issues are such that a lay jury can perceive negligence in the charged physician's conduct as well as any expert can, or in which the defendant/physician testifies as to the standard of care and there is objective evidence, including the testimony of the defendant/physician, which demonstrates a breach thereof. Even so, the plaintiff must also demonstrate by a preponderance of the evidence a causal nexus between the defendant's fault and the injury alleged.
Pfiffner, 643 So.2d at 1234.
In this case the defendants have produced the opinion of the medical review panel which found the defendants did not breach the applicable standard of care. Defendants also introduced the depositions of Dr. Lupin and Dr. Kuebel, both certified in internal medicine, who testified that defendants Dr. Kuebel and St. Charles General did not breach the applicable standard of care. Dr. Lupin testified upon reviewing the emergency room medical records of June 19, 1992 that Ms. Glenn "did not have any indication to be admitted" to the hospital on that evening and that he too would have sent Ms. Glenn home if he had been the treating physician on June 19, 1992. Dr. Kuebel testified Ms. Glenn did not complain of shortness of breath when she was brought into the emergency room, only that she was tired and weak. She had no symptoms of congestive heart failure, pulmonary edema, or poor tissue oxygenation. She was not in respiratory distress. She had a clear lung exam. Lab tests and an EKG revealed that Ms. Glenn had a left bundle branch block and a heart rate of 107. These findings were unchanged from her previous hospitalization. Ms. Glenn had low blood pressure and an elevated glucose level. Ms. Glenn, who has chronic anemia, was given an injection of insulin. Prior to discharge her blood pressure rose to 90.
While the plaintiff may rely upon the depositions of Dr. Kuebel and Dr. Lupin to establish the applicable standard of care, he must produce evidence to rebut Dr. Kuebel's and Dr. Lupin's testimony that the defendants did not breach the applicable standard of care and the alleged breach caused Ms. Glenn's death. Plaintiff has only produced the deposition of Thomas Rogers, a registered nurse, in opposition to the defendants' motion for summary judgment. However, the testimony of Mr. Rogers, a registered nurse, is not sufficient to rebut the testimony of Drs. Lupin and Kuebel. The applicable standards of knowledge, skill and care are determined from testimony of expert witnesses who are members of the pertinent specialty and who are qualified to testify on the specific subject at issue. Bradford, 688 So.2d at 35-36. Thus, Rogers is not qualified to testify whether Dr. Kuebel, a physician certified in internal medicine, breached the applicable standards of care. Further, Rogers does not even testify in his deposition that Dr. Kuebel breached the applicable standard of care or that the alleged breach was a cause of Ms. Glenn's death.
The medical issues in the present case are of a complex nature, requiring medical expert testimony to determine whether the defendants breached the applicable standard of care and contributed to Ms. Glenn's demise. The issues are not such which a lay jury could determine without assistance of such medical testimony. Therefore, it in order to succeed in this medical malpractice suit, the plaintiffs must rely upon more than lay testimony. Plaintiffs have not produced any medical expert testimony to rebut the testimony presented by the defendants.
In the case at bar, the defendants have produced deposition testimony concerning *1163 the applicable standard of care. The deposition testimony of Drs. Lupin and Kuebel, as well as the opinion of the medical review panel, reveal that the defendants did not breach the applicable standard of care in their treatment of Ms. Glenn. The plaintiff has failed to produce any documentation supporting his allegation that the defendants breached the standard of care and caused her death. As stated above, Ms. Glenn was a very ill person and suffered from various complex medical disorders. Plaintiff cannot simply rely on lay testimony to show defendants were negligent in their treatment of Ms. Glenn. Expert medical testimony is needed to explain the symptoms and diagnosis of congestive heart failure and pulmonary edema, as well as the interrelationship of plaintiff's various medical disorders. Plaintiff's failure to produce an expert witness to rebut the testimony presented by the defendants requires that defendants' motion for summary judgment be granted. Plaintiff has failed to produce any evidence to rebut the defendants' evidence that the defendants did not breach the applicable standard of care.
Accordingly, the judgment denying defendants' motion for summary judgment is reversed and set aside and there is judgment in favor of defendants granting their motion for summary judgment and dismissing plaintiff's suit against them.
REVERSED AND RENDERED.
BYRNES, J., concurs.
BYRNES, Judge, concurring.
Writs were applied for in this case on May 12, 1997, well in advance of the July 1, 1997 effective date of Act 483 of 1997 amending the summary judgment law. But the Supreme Court has just indicated in Kaufmann v. Fleet Tire Service of Louisiana, Inc., 97-1428 (La.9/5/97), 699 So.2d 75, that Act 483 of 1997 should be applied retroactively. Act 483 of 1997 makes summary judgments generally easier for the moving party to obtain. I agree with the opinion of the majority in its entirety, although it was written in contemplation of the pre Act 483 of 1997 law. Act 483 would, if anything only serve to bolster the result obtained by the majority. Therefore, I feel a Kaufmann remand is not called for in this case.