h GRISBAUM, Judge.
This appeal relates to a medical malpractice action, which was dismissed in favor of the defendants-appellees. We affirm.

ISSUE

We determine the principal issue to be addressed is whether the actions of the nurse, when considering the totality of the circumstances, constitute a breach of her standard of care.

FACTS AND PROCEDURAL HISTORY

The plaintiff, Gaynell Dumas, arrived at West Jefferson Medical Center at approximately 11:30 p.m. on November 25, 1990 in the early stages of labor. Plaintiffs treating obstetrician was Dr. Ralph Lupin. Although plaintiff enjoyed a mostly uneventful pregnancy, this was plaintiffs eighth pregnancy. Plaintiffs medical history included four live births and three elective abortions. In July 1989, the third elective abortion resulted in a septic abortion.
^Shortly after plaintiffs arrival at the hospital, she was placed on an external fetal monitor. Defendant, Nancy Reid, R.N., was the obstetrical nurse assigned to plaintiff. The first sign of fetal distress, a late deceleration, which is a slowing of the fetal heart rate following a contraction peak, was re *1212 corded at 12:04 a.m. This was noted in plaintiffs chart and Dr. Lupin was notified at 12:10 a.m. A second late deceleration occurred at 2:30 a.m. and a third late deceleration was recorded at 3:03 a.m. There is disputed testimony as to when Dr. Lupin was notified of the second and third deceleration. At 3:15 a.m., plaintiff sustained a uterine rupture. The unborn child then extruded from the uterus into the abdominal cavity and suffered trauma. Consequently, all fetal heart tones were lost. Dr. Lupin arrived in the operating room at 3:45 a.m. and Michelle Dumas was delivered by Cesarean section at 3:48 a.m. Michelle Dumas was delivered with brain damage. She died seven weeks later, but the cause of death was never determined.
The plaintiffs, Gaynell and Ronald Dumas, the parents of Michelle, brought this medical malpractice action against Dr. Lupin, Nancy Reid, R.N., West Jefferson Medical Center, and St. Paul Fire & Marine Insurance Company (“St.Paul”). The defendants, Dr. Lupin and St. Paul, later settled and were dismissed from this suit. The trial court found that Nurse Reid’s actions did not constitute a breach of the applicable standard of care and, likewise, found that the hospital was also free from liability. The plaintiffs appeal this judgment.

LAW AND ANALYSIS

We note that the appellants urge the following issues for review:
[1.] Nurse Reid violated the applicable standard of care, which violation was a substantial cause of Michelle Dumas’s brain damage and death, making West Jefferson and Ms. Reid liable to plaintiffs for damages.
[2.] Survival damages of $150,000 to Mr. and Mrs. Dumas plus medical expenses of $48,625.60 should have been awarded.
[3.] Gaynell Dumas and Ronald Dumas each should have been awarded $100,000 in wrongful death damages.
b[4.] Gaynell Dumas and Ronald Dumas each should have been awarded damages of $25,000 pursuant to La. Civ.Code Art. [sic] 2316.6(2).
Plaintiffs-Appellants Original Brief at'p. 6.
However, we determine that the pivotal question is whether the actions of the nurse, when considering the totality of the circumstances, constitute a breach of her standard of care. Because we affirm the trial court’s judgment, we pretermit discussion of Issues Two, Three and Four.
Appellants contend that Nurse Reid’s failure to notify Dr. Lupin of the second and third late decelerations in a timely matter caused Michelle’s brain damage and subsequent death. First, we note conflicting testimony regarding the time Dr. Lupin was called regarding the 2:30 a.m. deceleration. Nurse Reid testified that she called Dr. Lu-pin at 2:45 a.m., which was charted in the labor record, to advise him of fetal distress, and Dr. Lupin replied that he was on his way to the hospital. Nurse Reid also testified that she contacted Dr. Lupin again at 3:00 a.m., which was also charted in the labor record. Again, Dr. Lupin replied that he was en route. However, Dr. Lupin stated that he was not advised of any fetal distress until 3:15 a.m. and was told all fetal tones were lost.
Nevertheless, appellants contend that it is clear Dr. Lupin was not notified of the 3:03 a.m. late deceleration and that had Dr. Lupin been called at 3:05 a.m., a couple of minutes after this later deceleration, then Dr. Lupin, more likely than not, would have recognized a pattern of late decelerations, ordered an emergency Cesarean section, and promptly left for the hospital. Appellants also-urge that, more likely than not, Dr. Lupin would have arrived at the hospital about 3:35 a.m. and delivered Michelle by 3:38 a.m. According to the testimony of Dr. Lupin, Dr. John Finnan, and Dr. Jay P. Goldsmith, Michelle would likely have avoided brain damage and ultimately her death if she were delivered between 3:33 a.m. and 3:38 a.m., instead of 3:48 a.m.
The trial court found that neither West Jefferson Medical Center nor Nurse Reid deviated from their respective applicable standards of care in the treatment of Mrs. Dumas or her child. Specifically, the trial court noted, in its Reasons for Judgment, that, ^considering the evidence and testimony presented with regard to Nurse Reid’s actions, “when considered in totality, do not *1213 infer liability on the part of Nancy Reid.” We agree.
It is well settled in our jurisprudence that “[t]o prove medical malpractice, the plaintiff must establish by a preponderance of the evidence: the standard of care, a breach of that standard, causation, and damages.” Pellerin v. Humedicenters, Inc. 96-1996 (La.App. 4th Cir. 6/11/97), 696 So.2d 590, 592 (citations omitted); Bradford v. O’Neill, 95-2449, 95-2450 (La.App. 4th Cir.11/20/96), 688 So.2d 33, writ denied, 97-0803 (La.5/9/97), 693 So.2d 769. Nurses, who perform medical services, are subject to the same standards of care and liability as are physicians. Pommier v. ABC Ins. Co., 97-1342 (La.App. 3d Cir.7/15/98), 715 So.2d 1270. A determination of whether a hospital has breached the duty of care owed to a particular patient depends on the facts and circumstances of each case, and in finding or refusing a breach of duty, the fact finder has great discretion. Pellerin, supra.
We have previously stated that whether a defendant owes a plaintiff a legal duty is a question of law and whether a defendant has breached a duty owed is a question of fact. Milazzo v. Olsten Home Health Care, Inc. 97-30 (La.App. 5th Cir. 1/28/98), 708 So.2d 1108. Therefore, it follows that “[t]o reverse a fact finder’s verdict, the appellate court must find from the record that a reasonable factual basis does not exist for the verdict, and that the record establishes the verdict is manifestly wrong.” Pellerin, supra, at 592 (citing Stobart v. State through Dep’t of Transp. and Dev., 617 So.2d 880 (La.1993)).
It is not disputed that the nurse is subject to a duty. Specifically,
A nurse who practices her profession in a particular specialty service ... owes to her patients the duty of possessing the degree of knowledge and skill ordinarily possessed by members of her profession actively practicing in such a specialty service under similar circumstances. It is the nurse’s duty to exercise the degree of skill ordinarily employed, under similar circumstances, by members of the nursing profession in good standing who practice their profession in the same specialty service, and to use reasonable care and diligence, along with her [or his] best judgment, in the application of her [or his] skill to the case.
Ewing v. Aubert, 532 So.2d 876, 880 (La.App. 1st Cir.1988), writ denied, 551 So.2d 1333 (La.1989), followed by Gibson v. Bossier City Gen. Hosp., 594 So.2d 1332 (La.App. 2d Cir.1991). After reviewing the record, we find the evidence does not support a finding that Nurse Reid breached the applicable standard of medical care.
The testimonies of Dr. Lupin, Dr. Finnan, and Dr. Wolfson state that the duty of the trained obstetrical nurse is to timely inform the attending obstetrician of all late decelerations so that the obstetrician can make a judgment as to whether an emergency Cesarean section is indicated.
"When Nurse Reid called Dr. Lupin at 12:10 a.m., Dr. Lupin’s instruction was to watch the patient. When Dr. Lupin called the hospital at 1:25 a.m. and spoke with Nurse Reid, she described the contractions and fetal heart pattern. Nurse Reid testified that she informed Dr. Lupin that the monitor exhibited sporadic decelerations of the fetal heart rate but that the heart rate returned to baseline once Mrs. Dumas was repositioned on her side. When another deceleration occurred at approximately 2:30 a.m., Nurse Reid again repositioned Mrs. Dumas and administered oxygen. Again, the fetal heart rate returned to baseline but the tracing exhibited fetal distress. Nurse Reid called Dr. Lupin again at 2:45 a.m., and he replied that he was on his way to the hospital.
The labor records indicate that Dr. Lupin was called at 12:10 a.m., 2:45 a.m., and 3:00 a.m., shortly after each late deceleration. Although there is controversy about Nurse Reid’s failure to notify Dr. Lupin of the 3:03 a.m. late deceleration, the labor records indicate that, as of 3:00 a.m., Dr. Lupin was en route and that preparations were being made to call the Cesarean team, including Melanie Ose, the surgical assistant, B. Brulette, the nurse anesthetist, Dr. Capaldi, the anesthesiologist, and Dr. Taly, the pediatrician. The emergency room doctor and the house supervisor were also called, according to the labor *1214 records. The patient was prepped for surgery, the surgical instruments were obtained, and the patient was taken to the operating room. Dr. Lupin’s surgical assistant, the anesthesiologist, and the nurse anesthetist, all arrived prior to Dr. Lupin’s arrival at the hospital. Dr. Lupin arrived at the delivery unit at 3:45j¡a.m., one hour after being notified of fetal distress, and began the Cesarean section almost immediately. Michelle was delivered at 3:48 a.m.
Considering the totality of the evidence, we do not find that the trial court’s finding that Nurse Reid did not deviate from her standard of care constitutes error. Ergo, we affirm the trial court’s judgment. All costs of this appeal are to be assessed against the appellants.

AFFIRMED.