748 So.2d 36 (1999)
Mark W. HANEY, Robert L. Haney, Jr., Ellis P. Carter, Mary Carter Stokes, Martin C. Carter, Jr., David A. Carter, Pamela Carter Cabiro, Marcelle Carter LeBlanc and Ronald T. Carter
v.
DELTA PETROLEUM COMPANY, INC., Delta Rocky Mountain Petroleum, Inc., Paul B. Maxwell, W. Hampton Maxwell and Thomas A. Maxwell.
No. 99-CA-0170.
Court of Appeal of Louisiana, Fourth Circuit.
October 6, 1999.
Writ Denied January 14, 2000.
Arthur S. Lemann, III, New Orleans, Louisiana, and Roy Raspanti, Metairie, Louisiana, Counsel for Plaintiffs/Appellants.
Leonard A. Davis, Russ M. Herman, Herman, Herman, Katz & Cotlar, L.L.P., New Orleans, Louisiana, and Andrew C. Littman, Stevens, Littman & Biddison, *37 L.L.C., Boulder, Colorado, Counsel for Defendants/Appellees.
Court composed of Judge JOAN BERNARD ARMSTRONG, Judge JAMES F. McKAY III, Judge MICHAEL E. KIRBY.
KIRBY, Judge.
The plaintiffs in the present case are former shareholders of the defendant corporation Delta Petroleum Company, Inc. (Delta); they have sued the directors, officers, and the corporation itself for breach of fiduciary duty. Delta moved for partial summary judgment on one issue: whether Delta had a duty to disclose the cash flow projections of a subsidiary company, Delta Rocky Mountain Petroleum, Inc. (DRMP.)[1] The trial court granted the motion for partial summary judgment, finding that Delta had no duty to disclose such projections; the partial summary judgment was designated as final as required by La. C.C.P. Art. 915(3). From this judgment, plaintiffs appeal.
Delta was, in 1983, a closely held corporation with shares owned by members of several family groups. The company had been successfully run by the active shareholders for some time; however, by 1983, the two most active shareholders, Paul Maxwell and Tom Maxwell, had found that their disagreements about the company's management were serious enough to mandate a parting of the ways. It was decided that one of them would buy out the shares of the other, and so a local brokerage house was engaged to estimate the value of the company's stock. They received an estimate of $1,000.00 to $1,200.00 per share; after negotiation, Paul Maxwell agreed to pay Tom Maxwell $1,000.00 per share, but only if enough shareholders tendered their shares to Delta at that price as to give Paul Maxwell a large majority of Delta's stock.
A tender offer was made to Delta's shareholders in the fall of 1983. Shareholders received audited financial statements and the offer, which provided the following:
"This price is based as a result of negotiations between the Company and several large shareholders. ... Due to the extent and varying nature of the ownership, the Company feels that the $1,000 price fairly represents the market value of he shares. In considering this tender offer, you should consult with such people as you deem appropriate and refer to the audited financial statements for the period ending June 30, 1983 for further verification of information."
Delta was able to buy back all outstanding shares in the company through this offer.
The information provided to the stockholders did not include a set of financial projections for DRMP, then a subsidiary company in the process of being created. These projections anticipated strong profits from DRMP, and plaintiffs allege that the revelation of these projections would have indicated that the value of Delta's shares was greater than $1,000.00 per share.
Plaintiffs' basic complaint is that the directors of Delta breached their fiduciary duty to the shareholders and defrauded them by undervaluing the stock and buying it at this reduced value; they alleged that a pattern of fraud existed throughout Delta's dealings with its stockholders. However, the partial summary judgment appealed from applies only to a single issue: whether Delta had a duty to disclose these financial projections.
The trial court found that, as a matter of law, Delta had no duty to disclose financial projections for DRMP as part of its tender offer to its shareholders. Although different standards are applied by different courts, the trial court found that under no *38 standard was Delta obligated to have disclosed the projections. The trial court's reasons for judgment read, in pertinent part:
"The Court concludes that, as a matter of law, in 1983, none of the Defendants had a duty to Plaintiffs to disclose financial projections for DRMP to its shareholders in connection with this Tender Offer. E.G. Panter v. Marshall Field, 646 F.2d 271 (7th Cir.1981), cert. denied, 454 U.S. 1092, 102 S.Ct. 658, 70 L.Ed.2d 631 (1981) (no duty to disclose financial projections); Starkman v. Marathon Oil, 772 F.2d 231 (6th Cir.1985) (disclosure of financial projections is required only if the predictions underlying the projection are substantially certain to hold); Vaughn v. Teledyne, Inc., 628 F.2d 1214 (9th Cir.1980) (affirming summary judgment for defendants and concluding that the SEC does not require a company to disclose financial projections); Walker III(sic) v. Action Industries, Inc., 802 F.2d 703 (4th Cir.1986), [cert. denied, 479 U.S. 1065, 107 S.Ct. 952, 93 L.Ed.2d 1000 (1987)] (discussing various approaching taken by other circuits and, without adopting any of them, holds that company which made a tender offer to purchase its own shares had no duty to disclose financial projections in the context of the tender offer.)
Even if the Court adopted the approach set forth in Starkman, supra, the Court concludes that, in this case, the alleged financial projections were not substantially certain to hold and/or the estimates were not made with reasonable certainty. The undisputed evidence is that, in fact, DRMP sustained net losses in 1984, 1985, 1986, and 1987.
Plaintiffs argue that the trial court erred in removing from the jury two basic questions: (1) whether the cash flow projections of DRMP were material, and (2) whether the defendant/directors' nondisclosure of the cash flow projections of DRMP to the plaintiff/shareholders was a breach of their fiduciary duty to disclose all material facts.
Summary judgment is properly granted only if the pleadings and evidence show that there is no genuine issue of material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. Art. 966(c). Article 966 has recently been amended; the burden of proof remains with the mover to show that no genuine issue of material fact exists. Now, however, once the mover has made a prima facie showing that the motion should be granted, the burden shifts to the non-moving party to present evidence demonstrating that material factual issues remain. Once the motion for summary judgment has been properly supported by the moving party, the failure of the non-moving party to present evidence of a material factual dispute mandates the granting of the motion. See Hayes v. Autin, 96-287 (La.App. 3 Cir. 12/26/96), 685 So.2d 691, writ denied, 97-0281 (La.3/14/97), 690 So.2d 41. Appellate courts review summary judgments de novo, using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate.
We first address plaintiffs' assertion that the trial court erred in removing the question of the materiality of the cash flow projections from the jury. Plaintiffs correctly point out that questions of materiality are generally questions for the jury. See Isquith v. Middle South Utilities, Inc., 847 F.2d 186 (5th Cir.1988), cert. denied, Middle South Utilities v. Isquith, 488 U.S. 926, 109 S.Ct. 310, 102 L.Ed.2d 329 (1988). However, before a trial court can begin addressing the issue of materiality, there must first exist a duty to disclose. Whether a defendant owes a legal duty is a question of law for the trial court. Dumas v. West Jefferson Medical Center, 98-592 (La.App.5 Cir. 12/16/99), 722 So.2d 1210, writ denied, 99-0530 (La.4/9/99), 740 So.2d 634. The scope of that duty is also a question of law. Taylor v. Shoney's, Inc., 98-810 (La.App. 5 Cir. 1/26/99), 726 So.2d 519, *39 writ denied, 99-0540 (La.4/9/99), 740 So.2d 635. In this case, the trial court determined that the defendant owed no legal duty to disclose the financial projections; given that determination, the issue of materiality was moot, and the trial court did not err in removing it from the jury.
This brings us to the plaintiffs' second assertion: that the trial court erred in finding that the defendant had no legal duty to disclose the financial projections for DRMP. Although plaintiffs have cited no case that required corporate officers and directors to disclose financial projections as part of a tender offer, they attempt to distinguish their situation from those in the cases cited by the trial court. We find their arguments unpersuasive.
At the time of the 1983 tender offer, two main approaches to the duty to disclose soft information, such as financial projections, existed. In the first approach, used in Panter, supra, directors had no legal duty to disclose financial projections to shareholders under any circumstance. By this standard, the trial court's dismissal of plaintiffs' claim on this point was correct.
The other approach, used in Starkman and Vaughn, supra, dictates that directors only have a legal duty to disclose financial projections if those projections are substantially certain to hold. It was this approach that the trial court addressed in writing: "Even if the Court adopted the approach set forth in Starkman, supra, the Court concludes that, in this case, the alleged financial projections were not substantially certain to hold and/or the estimates were not made with reasonable certainty. The undisputed evidence is that, in fact, DRMP sustained net losses in 1984, 1985, 1986, and 1987."
Plaintiffs strenuously object to the trial court's finding in this area, as they do dispute the evidence offered at the motion for partial summary judgment. Defendants properly supported their motion, offering up documentation supporting their assertion (and the trial judge's finding) that DRMP did not make money during the years stated. Plaintiffs, on the other hand, have offered no evidence that DRMP did turn a profit. They have offered evidence of Delta's general financial well-being; however, they have not demonstrated that the profitability of the corporation was dependent upon the welfare of its subsidiary DRMP. Beyond this, plaintiffs can only allege that DRMP proved to be as profitable as the projections indicated. Mere allegations are not enough to overcome the prima facie case stated by defendants, and do not meet plaintiffs' burden under Art. 966.
Accordingly, the trial court did not err in granting partial summary judgment to defendants, ruling that they had no duty to disclose this particular set of financial projections for DRMP. Therefore, the summary judgment is affirmed.
AFFIRMED.
NOTES
[1] Delta had previously moved for summary judgment twice, both times unsuccessfully. In one of these earlier motions, this particular issue was briefed and argued along with others; the third motion focused on this issue alone.